710 A.2d 1098

Lisa R. JACOBS, Appellant,

v.

Harry HALLORAN, Patricia Halloran, Lynda Fyffe–McFadden,
General Motors Acceptance Corporation, Appellees.

Supreme Court of Pennsylvania.

Submitted Dec. 2, 1997.

Decided April 2, 1998.

Richard A. Sprague, Thomas A. Sprague, Denise Pallante, Joseph R. Podraza, Jr., Philadelphia, for Lisa R. Jacobs.

Peter C. Gardner, Philadelphia, for Amicus-Pennsylvania Trial Lawyers Ass'n.

Jonathan F. Ball, Philadelphia, for Lynda Fyffe-McFadden.

Edward J. Tuite, Wayne, for Harry & Patricia Halloran.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

ZAPPALA, Justice.

This appeal raises significant issues regarding the standard applicable to the dismissal of a case for inactivity pursuant to a defendant's motion for non pros.[1] For the reasons set forth herein, we hold that the equitable principles underlying the entry of a judgment of non pros must be recognized and the presumption of prejudice first enunciated in *Penn Piping, Inc., v. Insurance Company of North America*, 529 Pa. 350, 603 A.2d 1006 (1992), must be abandoned.

Appellant, Lisa Jacobs, was injured in an automobile collision involving a vehicle owned by Appellees, Harry and Patricia Halloran. When Appellant filed her complaint in August of 1987, she believed that the vehicle had been driven by Appellee, Lynda Fyffe–McFadden, with the permission of the Hallorans.

On November 16, 1989, almost two years and three months after the complaint was filed, Fyffe–McFadden testified at a deposition that she was not driving the vehicle at the time of the accident. Instead, she stated that a friend was driving the

---

1. The two companion cases of *Shope v. Eagle*, 551 Pa. 360, 710 A.2d 1104 (1998), and *Marino v. Hackman*, 551 Pa. 369, 710 A.2d 1108 (1998), also decided today, involve the dismissal of actions for inactivity pursuant to local rules implementing Rule of Judicial Administration 1901. In *Shope*, we hold that the same standard is applicable to terminations pursuant to a defendant's motion for a judgment of non pros and the court's dismissal pursuant to Rule 1901. In *Marino*, we hold that non-docket activity can be examined in determining whether a compelling reason exists for the delay in prosecution.

Hallorans' vehicle without their consent. This admission created a possible uninsured motorist claim against the insurer of the vehicle in which Appellant was a passenger at the time of the collision.

In September of 1991, the docket reflected the withdrawal of Appellant's counsel and the appearance of her new counsel. Entries were also made on the docket through October 3, 1991. No docket activity occurred thereafter until October 26, 1993, when the common pleas court issued a notice that it would terminate the case for lack of activity. Appellant filed an active status certification on November 5, 1993.

On April 15, 1994, Fyffe–McFadden filed a petition for entry of a judgment of non pros in which the Hallorans later joined. On or about June 23, 1994, Appellant provided Appellees with an expert witness report on damages and requested them to sign a praecipe certifying the case as ready for trial.

The court entered judgments of non pros for Appellees by orders dated September 26, 1994. These orders were subsequently vacated pending reconsideration and on January 17, 1995, the orders were reinstated. Appellant filed a motion for reconsideration wherein she requested that the court open the judgments.

The court refused to open the judgments, holding that docket inactivity of two years and six months[2] established a lack of due diligence in pursuing the claim; that the exchange of correspondence regarding the status of the uninsured motorist claim and the change of counsel did not constitute compelling reasons for the delay;[3] and that prejudice to

---

2. Apparently, the court measured the delay from the last docket entry of October 1, 1991, to the April 15, 1994 filing of the Hallorans' petition for a judgment of non pros.

3. Specifically, the court held that the time spent deciding whether to bring the uninsured motorist claim constituted a legally sufficient explanation for some period of the delay. It reasoned, however, that such decision should have been made in a matter of days and should not have been reserved until the receiving of a formal denial of coverage. The court recognized that new counsel was retained only three weeks prior to the period of inactivity. The court found it reasonable to allow counsel three months to familiarize himself with

Appellees resulting from the delay is presumed. It rejected Appellant's claim that Appellees suffered no actual prejudice because the case was ready for trial. The court further refused to consider an affidavit of Appellant's prior counsel which alleged that the Hallorans' counsel orally agreed to allow the case to be delayed while Appellant pursued the uninsured motorist claim. The court noted that the alleged oral agreement was not raised in the response to the petition for judgment of non pros, in the supplemental response or at oral argument. It further stated that Appellant failed to take discovery regarding the agreement.

■ The Superior Court affirmed on the basis of the common pleas court opinion.[4] Judge Kelly dissented, finding that the common pleas court abused its discretion in entering the judgments of non pros. He concluded that, considering the equitable principles underlying the entry of a judgment of non pros, Appellees should not benefit from any delay in prosecution which they, in part, created.

■ The question of granting a non pros due to the failure of the plaintiff to prosecute his action within a reasonable time rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Gallagher v. Jewish Hospital Ass'n,* 425 Pa. 112, 113, 228 A.2d 732, 733 (1967).[5]

the case, thus leaving an unexplained period of delay of two years and three months.

4. The court treated Appellant's motion for reconsideration as a petition to open judgment of non pros as it contained all the elements necessary for such petition.

We recognize that in order to remove a judgment of non pros, three elements must be met: (1) a petition to open must be promptly filed; (2) the delay must be reasonably explained; and (3) facts must be shown to exist which support a cause of action. *Pine Township Water Co., Inc. v. Felmont Oil Corp.,* 425 Pa.Super. 473, 625 A.2d 703 (1993), alloc. denied, 537 Pa. 665, 644 A.2d 1202 (1994). However, since Appellant's underlying claim is that the court erred in entering the non pros, our opinion discusses the standard applicable to that issue.

5. In *Gallagher,* our Court used the term "manifest abuse of discretion" in describing the appropriate standard of review. *Gallagher* has been repeatedly cited for this proposition. *See James Brothers Company v.*

The lower courts applied the standard for entering a judgment of non pros announced in *Penn Piping*. We began our analysis in *Penn Piping* by restating the three part test set forth in *James Brothers Co. v. Union Banking and Trust Co. of DuBois*, 432 Pa. 129, 132, 247 A.2d 587, 589 (1968).

A Court may properly enter a judgment of non pros when a party to the proceeding has shown a want of due diligence in failing to proceed with reasonable promptitude, and there has been no compelling reason for the delay, and the delay has caused some prejudice to the adverse party, such as the death of or unexplained absence of material witnesses.

In *Penn Piping,* where six years had lapsed after the filing of the complaint, the lower courts had agreed that (1) there was an absence of due diligence in prosecuting the case and (2) there was no compelling reason for the delay. At issue, then, was the prejudice prong. Citing *Shrum v. Pennsylvania Electric Co.*, 440 Pa. 383, 269 A.2d 502 (1970), our Court found that the delay was "presumptively prejudicial" and went on to hold that "in cases involving a delay of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket." *Id.* at 356, 603 A.2d at 1009. We also discussed whether the presumption of prejudice was successfully rebutted. We concluded that because an unexplained delay of four years existed, which exceeded the two year period after which prejudice is presumed, the presumption was not rebutted.

Appellant contends that our decision in *Penn Piping* was not meant to allow a defendant to enjoy the benefits of a judgment of non pros when the period of delay was chargeable

*Union Banking and Trust Company of DuBois*, 432 Pa. 129, 132, 247 A.2d 587, 589 (1968); *Penn Piping,* 529 Pa. at 354, 603 A.2d at 1008.

We have subsequently held, however, that there is no distinction between a gross abuse of discretion standard of review and an abuse of discretion standard. *See Moore v. Moore*, 535 Pa. 18, 28 n. 4, 634 A.2d 163, 168 n. 4 (1993). The term "gross" is merely surplusage which does not alter the standard of review. See also *Commonwealth v. Brown*, 550 Pa. 580, 708 A.2d 81 (1998) (Opinion in Support of Affirmance). Likewise, we find the use of the term "manifest" in "manifest abuse of discretion" has no legal significance and is therefore unnecessary to describe the applicable standard.

to or caused by the defendant. She further argues that it is inherently unfair to dismiss the case when no actual prejudice was established since the case was ready for trial. These arguments essentially challenge the propriety of the concept of presumed prejudice.

After an extensive review of the historical rationale underlying the entry of a judgment of non pros along with the current practical dilemmas which have resulted from application of the presumption, we conclude that the two year presumption of prejudice must be abandoned.

■ The courts of Pennsylvania have long recognized the existence of the power of the court to enter a judgment of non pros in consequence of long delay of prosecution of a cause. *Waring v. The Pennsylvania Railroad Company*, 176 Pa. 172, 35 A. 106 (1896). This power originated in common law, prior to the passage of any statute. *Id.* The grant of non pros was traditionally based not upon a statute of limitations, but rather upon the equitable principle of laches which does not involve the passage of a specific amount of time. *Manson v. First National Bank*, 366 Pa. 211, 77 A.2d 399 (1951). "Laches arises when a defendant's position or rights *are so prejudiced* by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him." *Bach's Estate*, 426 Pa. 350, 359, 231 A.2d 125, 130 (1967), quoting, *Grote Trust*, 390 Pa. 261, 269–270, 135 A.2d 383, 387 (1957) (emphasis added).[6]

Consistent with this notion, early cases held that if delays in prosecution are to a great extent due to the defendant's own procurement it would be an injustice to allow the defendant to impute laches. *Wingert v. Anderson*, 309 Pa. 402, 164 A. 333 (1932). More importantly, we also held that the plaintiff will

**6.** Black's Dictionary similarly provides that the doctrine of laches is
based upon the maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing *prejudice* to adverse party, operates as a bar in court of equity.
Black's Law Dictionary 875 (6th ed.1990) (emphasis added).

not be penalized for laches if his delay has not resulted in injury to his adversary. *Manson v. First National Bank,* 366 Pa. at 215, 77 A.2d at 401–402 (1951), citing *Montgomery Brothers, Inc., v. Montgomery,* 269 Pa. 332, 112 A. 474 (1921); *Selmer v. Smith,* 285 Pa. 67, 70, 131 A. 663, 665 (1926); *Quinn v. American Spiral Spring & Manufacturing Co.,* 293 Pa. 152, 160, 141 A. 855, 858 (1928); *Potter Title & Trust Co., Administrator v. Frank,* 298 Pa. 137, 141, 148 A. 50, 52 (1929); *Schireson v. Shafer,* 354 Pa. 458, 463, 47 A.2d 665, 668 (1946); *Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 157, 53 A.2d 143, 150 (1947); *Joseph Melnick Building & Loan Association v. Melnick,* 361 Pa. 328, 339, 64 A.2d 773, 778 (1949).

Considering these equitable principles that underlie the entry of a judgment of non pros, we find that our adoption of a *presumption* of prejudice in *Penn Piping* was erroneous.[7] Simply put, the presumption is inconsistent with the well-established notion that the adversary must suffer harm before a case is dismissed for lack of prosecution. Such harm or prejudice to the adversary is the very basis upon which a claim of laches is founded.

We recognize that defendants may be prejudiced by undue delays in litigation—memories fade, witnesses disappear and documents become lost or are destroyed. Additionally, pending lawsuits often cause undue stress and anxiety. However, the rules concerning the dismissal of cases for inactivity reflect policy concerns which implicate the interests of both plaintiffs and defendants. It is unnecessary to presume prejudice because the defendant is free to present evidence of actual prejudice. In cases where no activity has occurred for a period of two years, but the defendant has not lost his ability to adequately prepare a defense, it serves no equitable pur-

7. As noted in this author's dissenting opinion in *Penn Piping,* the statement in *Shrum* providing that the seven year lapse of time was "presumptively prejudicial to all parties even without any specific showing of prejudice on the record," *id.* at 386–87, 269 A.2d at 504, was merely dictum. We concluded in *Shrum* that no motions for non pros were filed and that the lower court did not decide the case on the ground of delay alone. *Shrum* therefore did not set a new standard for the entry of a judgment of non pros as our Court considered the appeal on its merits.

pose to dismiss the plaintiff's case solely due to the passage of time. There is no logical distinction between the harm caused to a defendant by the plaintiff's delay of two years and the harm caused to a defendant by a delay of two years less one day.

Moreover, as a result of defining a period after which prejudice is automatically presumed, the practical application of this equitable doctrine has become enigmatic. There has been a lack of consistency in the lower courts as to whether the presumption is rebuttable and, if so, what type of evidence is required.[8] This indicates to us that the application of the presumption has proved to be unworkable. Furthermore, it would be unfortunate to see those matters which have been cleansed from the docket due to the entering of judgments of non pros reappear as attorney malpractice claims.

The effect of our decision today is to return to the three part test of *James Brothers*. To dismiss a case for inactivity pursuant to a defendant's motion for non pros there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause *actual* prejudice to the defendant.[9] As always, this determination is to be made by the

---

8. For example, in *Mudd v. Nosker Lumber, Inc.*, 443 Pa.Super. 483, 662 A.2d 660 (1995), the Superior Court held that the presumption of prejudice was rebutted by the conduct of the defendant seeking a judgment of non pros. The court found that where the circumstances indicate that the party seeking non pros has come to the court of equity with unclean hands, the party is estopped from obtaining the equitable remedy of a judgment non pros.

 More recently, a different panel of the Superior Court held to the contrary in *State of the Art Medical Products v. Aries Medical, Inc.*, 456 Pa.Super. 148, 689 A.2d 957 (1997). The court there held that the *Penn Piping* presumption may be rebutted only to the extent that a plaintiff may demonstrate that the unexplained period of docket inactivity is less than two years. This interpretation precludes rebuttal of the presumption because if the plaintiff can establish that the period of delay is less than two years, the presumption would not apply.

9. This rule shall apply to all pending cases where the issue has been preserved.

trial court, whose decision will not be disturbed absent an abuse of discretion.

In *James Brothers*, we noted that prejudice could be established by the death or absence of a material witness. The Superior Court has further defined prejudice as "any substantial diminution of a party's ability to properly present its case at trial." *Metz Contracting, Inc., v. Riverwood Builders, Inc.*, 360 Pa.Super. 445, 451, 520 A.2d 891, 894 (1987), citing *American Bank & Trust Company v. Ritter, Todd and Haayen*, 274 Pa.Super. 285, 418 A.2d 408 (1980).

As the court presumed prejudice in the instant case, we remand the matter for a determination of whether the Hallorans were actually prejudiced by the delay in prosecution.[10]

 A remand is not necessary as to Fyffe–McFadden, however, as we find that it is clear that she came before the court with unclean hands. A party who seeks the equitable relief provided by the entry of a judgment of non pros must do so with clean hands. *Mudd v. Nosker Lumber, Inc.*, 443 Pa.Super. 483, 662 A.2d 660 (1995). The doctrine of unclean hands is

> far more than a mere banalty. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith.... Thus while 'equity does not demand that its suitors shall have led blameless lives' ... as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue....

**10.** We need not reach the issue of whether the trial court erred in refusing to consider the affidavit of Appellant's prior counsel which stated that the Hallorans' counsel agreed to allow the prosecution of the case to be delayed while the uninsured motorist claim was pending. This affidavit was first presented in Appellant's petition to open. As we find that the trial court employed the incorrect standard in initially entering the non pros judgment, any argument relating to the petition to open the judgment need not be discussed.

*Shapiro v. Shapiro,* 415 Pa. 503, 506–507, 204 A.2d 266, 268 (1964), quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814–15, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945).

 Fyffe–McFadden's dishonesty regarding the identity of the driver of the vehicle constitutes bad faith which is directly relevant to the delay in prosecution from which she seeks relief.[11] To allow her to benefit from a delay which she in part created is inequitable and will not be permitted.[12]

Accordingly, the order of the Superior Court is vacated and the matter is remanded to the common pleas court for proceedings consistent with this opinion.

**11.** It is not apparent from the record whether the Hallorans also acted in bad faith.

**12.** It is undisputed that McFadden was aware of the uninsured motorist claim as the law firm representing her also represented the insurance carrier against whom the claim was made.