Joseph N. **RUBENSTEIN** and Marsha Rubenstein, his wife, Appellants,

v.

**AMERICAN FEDERATION OF TEACHERS, LOCAL 2067, a labor organization, and Community College of Allegheny County, a non-profit corporation.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1997.

Decided June 3, 1998.

---

William D. Hague, Pittsburgh, for appellants.

Ronald G. Backer and Michael McAuliffe Miller, Pittsburgh, for appellees.

Before KELLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Joseph Rubenstein (Rubenstein) and his wife, Marsha Rubenstein (collectively, Plaintiffs) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) denying Plaintiffs' petition for relief from judgment of *non pros* granted in favor of the American Federation of Teachers (Union) and the Community College of Allegheny County (CCAC) (collectively, Defendants).[1] We reverse.

Rubenstein was a tenured professor of electronics who was employed at CCAC for nineteen years. Upon receiving notification of his termination, Rubenstein filed a grievance on March 1, 1991, pursuant to the terms of the collective bargaining agreement (agreement) between the Union and CCAC. The Union refused to pursue the grievance to arbitration, and Rubenstein was discharged on August 23, 1992.

Rubenstein hired an attorney (first attorney) and filed suit in October of 1992 against the Union and CCAC. The four count complaint alleged: (1) collusion between CCAC and the Union to deny Rubenstein his rights under the agreement; (2) that the Union breached its fiduciary duty of fair representation; (3) defamation as to CCAC based on false statements regarding Rubenstein's competence and reliability in the classroom because of his epileptic condition; and (4) intentional infliction of emotion distress. The pleadings were closed in February 1993 and there was limited discovery through October 1993.

Just prior to October 4, 1993, the first attorney informed Plaintiffs that his law firm was in the process of dissolving, and he would be unable to continue providing legal representation to them. Rubenstein requested the first attorney to remain as counsel of record until substitute counsel could be retained. Plaintiffs and the first attorney agreed and contacted several law firms, all of which declined to represent Plaintiffs. Finally, after reviewing Plaintiffs' file, another attorney (second attorney) agreed to become Plaintiffs' legal counsel. A substitution of counsel was filed on March 27, 1995 on Plaintiffs' behalf.

On July 10, 1996, Plaintiffs' second attorney filed a praecipe to place the case at issue. On July 23, 1996, Defendants filed a joint petition for judgment of *non pros*. The trial court issued a rule to show cause on August 30, 1996. Plaintiffs filed an answer to the petition and three depositions in support of Plaintiffs' position that *non pros* should not be entered.[2] A hearing was held on Novem-

---

1. This case was assigned to the author on March 2, 1998.

2. Plaintiffs submitted the depositions of: (1) first attorney; (2) Dr. John Giddings; and (3) Rubenstein.

ber 8, 1996, wherein Plaintiffs explained that the delay from October 1993 to March 1995 was due to the inability to retain new counsel, and that the additional delay from March 1995 to July 1996 was their continuing unavailability to assist new counsel in the preparation of the case because of illness. The trial court found that this was not a satisfactory explanation for the two year and nine month delay. The trial court opined, in part, as follows:

> There is no reason why prior counsel did not place the case at issue or why new counsel did not place the case at issue shortly after entering his appearance. The explanation that counsel was not in a position to prepare and try the case is simply a tactical decision to delay taking any action on the case until plaintiffs' counsel was ready to go forward.
>
> In Allegheny County, cases are listed for trial on the basis of their issue number [pursuant to local rule 214(h) ].
>
> \*     \*     \*
>
> A plaintiff can place a case at issue as soon as the pleadings are closed; the case does not need to be ready for trial. If a plaintiff places a case for which a jury trial is sought on the issue docket (and does not thereafter take any steps to prevent the case from appearing on the trial list on which it would otherwise appear), *Penn Piping* will not have any applicability. The plaintiff will have done everything necessary to move the case forward to trial simply by placing the case on the issue docket. If there is inactivity for more than two years after the case has been placed at issue, the fault ordinarily lies with the court rather than with the plaintiff.
>
> There are no immediate deadlines that must be met once a case is placed at issue. Illness can be an explanation for postponing a trial of a case on a published trial list. However, illness is not a reasonable excuse for the failure to take the steps that are required in order for a case to be placed at the bottom of the list of cases that will eventually appear on a published jury trial list.

Trial Court Opinion at 5–6 (footnote and citations omitted).

Accordingly, the trial court granted the Defendants' joint petition for *non pros* based on the standard set forth in *Penn Piping, Inc. v. Insurance Company of North America*, 529 Pa. 350, 354, 603 A.2d 1006, 1008 (1992). The trial court subsequently denied Plaintiffs' motion for reconsideration resulting in the instant appeal.

The sole issue for our consideration is whether the delay caused by the dissolution of Plaintiffs' counsel's law firm and Plaintiffs' failure to obtain substitute counsel combined with Plaintiffs' physical and mental infirmities tolled the period of presumptive prejudice caused by the two-year period of docket inactivity under *Penn Piping*.

Granting a dismissal for failure to prosecute an action within a reasonable time is within the discretion of the trial court, and that order will not be disturbed on appeal except where there is proof of abuse of discretion. *Gallagher v. Jewish Hospital Association of Philadelphia*, 425 Pa. 112, 228 A.2d 732 (1967). A court may exercise its discretion to enter a judgment of *non pros* where a party to the proceeding has shown a lack of due diligence in failing to proceed with reasonable promptitude, there has been no compelling reason for the delay, and the delay has caused prejudice to the adverse party. *Jacobs v. Halloran*, —— Pa. ——, 710 A.2d 1098 (1998) (citing *James Brothers Company v. Union Banking and Trust Company of DuBois*, 432 Pa. 129, 247 A.2d 587 (1968)).

In *Jacobs*, the Supreme Court ruled that the presumption of prejudice articulated in *Penn Piping* was inconsistent with the established notion that an adversary must suffer harm before a case will be dismissed for lack of prosecution and returned to the three-part test of *James Brothers*. In a companion case to *Jacobs*, our Supreme Court was given the opportunity to determine whether the second prong of the test for inactivity, *i.e.*, whether the plaintiff had a compelling reason for the delay, should include consideration of activities which are not reflected on the docket. *Marino v. Hackman*, —— Pa. ——, 710 A.2d 1108 (1998). In *Marino*, our Supreme Court stated that:

[i]n *Penn Piping,* we stated that compelling reasons for delay were set forth in 'cases where the delaying party establishes the delay was caused by bankruptcy, liquidation, or other operation of law, or in cases awaiting significant developments in the law.' We noted, however, that 'there may, of course, be other compelling reasons which will be determined on a case-by-case basis.' While we adhere to the view that each case must be examined on its merits, we find that non-docket activity can be examined in deciding whether a compelling reason exists.

*Marino,* —— Pa. at ——, 710 A.2d at 1110 (citations omitted).[3]

Plaintiffs argue that they have shown due diligence and compelling reason for the delay. Plaintiffs contend that when their first attorney informed them in October of 1993 that he was unable to adequately represent them due to the dissolution of his law firm, a total of sixteen law firms, attorneys and legal organizations were contacted. During this time period, the first attorney agreed to remain attorney of record so as not to prejudice the Plaintiffs. Each of the prospective attorneys contacted by the first attorney took a month or more to complete a review of the case file which included three large folders. In addition, the first attorney spoke with several attorneys originally contacted by Rubenstein. Finally, substitute counsel was obtained in March 1995.

However, after the second attorney was finally obtained in March 1995, Plaintiffs contend that Rubenstein and his wife were physically incapable of working, meeting with counsel, or providing counsel with necessary documentation. Specifically, Plaintiffs' complaints are that Rubenstein suffered from severe bleeding ulcers. His weight went from 168 pounds to 102 pounds. Rubenstein

suffers from epilepsy, which is controlled by medication, and his weight loss has made it difficult to control his seizures. Due to his seizure disorder and the emotional effects of epilepsy, Rubenstein received psychological treatment from Dr. John Giddings.

Additionally, Marsha Rubenstein suffers from chronic pulmonary disease that has resulted in her extended confinement to bed. Since her husband's discharge from CCAC and his subsequent physical aliments, Marsha Rubenstein's condition has deteriorated. She developed fibromyalgia and stress in her lower back and legs. She also became emotionally distraught, which caused her to be confined to bed for six-to-eight months, after the death of her son's longtime girlfriend. Also each of Plaintiffs' three dependent children have experienced medical and emotional difficulties throughout this period.

Accordingly, Plaintiffs argue that there was due diligence on their part and that there are compelling reasons for the delay, specifically their inability to find replacement counsel and their severely failing health that was beyond their control. As such, Plaintiffs' contend, the trial court abused its discretion by granting Defendants' petition for *non pros* and denying Plaintiffs' motion for reconsideration. We agree.

As pointed out above, each case must be examined on its merits and non-docket activity can be examined in deciding whether compelling reasons exist for a delay. *Marino.* Herein, the trial court committed an abuse of discretion by failing to consider and evaluate appropriately the compelling reasons for the delay. With regard to this prong of *Jacobs* as explained in *Marino,* the trial court's opinion is intrinsically contradictory. Citing the local rule requiring placing the case at issue, the trial court opined that there was no

**3.** The Supreme Court in *Marino* found that the trial court abused its discretion in dismissing the case for inactivity as a compelling reason existed for the delay in prosecution. The Supreme Court found that:

[t]his case has an unusual amount of activity not entered on the docket: the death of Appellants' first attorney and the substitution of his partner, an attorney not known to or selected by Appellants; the taking of depositions of all the parties; the replacement of Appellant's second attorney because of Appellant's perception that he was not moving their case forward; the difficulties encountered by Appellants' third attorney in obtaining the case file from Appellants' second attorney as well as difficulty in getting the second attorney to withdraw his appearance; the exchange of letters seeking a settlement of the case; and, finally, a telephone discussion of certifying the case ready for trial. *Marino,* —— Pa. at ——, 710 A.2d at 1111.

reason why counsel could not have placed the case at issue. The trial court then stated that if there is inactivity for more than two years after the case has been placed at issue, the fault ordinarily lies with the court rather than with the plaintiff and this excuses any court delay exceeding two years. The trial court explained further that if counsel had placed the case at issue, then illness could be an excuse to postpone trial. Then the trial court ignores the Plaintiffs' illness prior to placing the case at issue and concludes that, in the instant case, Defendants are prejudiced by time alone. This is an inherent abuse of discretion because the matters of (1) whether there was due diligence in failing to proceed with reasonable promptitude; and (2) whether there is no compelling reason for the delay, should be considered before the issue of prejudice.[4]

Herein, the cause of action arose in August 1992, the complaint was filed in October 1992, the pleadings were closed in February 1993 and depositions were conducted in October 1993. Plaintiffs' complaint contained four matters as recognized by the trial court. Noteworthy is the epileptic condition of Rubenstein and his emotional distress. These acknowledged conditions of Rubenstein along with the undisputed record of his first attorney, Dr. Giddings, and Rubenstein himself describing adequately his medically prohibitive condition, prevented both Plaintiffs from adequately participating during the period at issue.

Likewise, the trial court failed to recognize the most important factual basis, which proves due diligence and another compelling reason for the delay: the undisputed testimony of record of services by the first attorney, an officer of the courts of this Commonwealth. The Plaintiffs' first attorney's service to the court in this matter is an example of the highest ethical standards of representation incumbent upon all counsel. The first attorney was an associate in a law firm retained by Plaintiffs prior to October of 1992. Toward the end of 1993, the law firm totally disbanded. The first attorney dutifully in-

formed Plaintiffs that he was unable to adequately represent them further in the case. Plaintiffs asked the first attorney to remain attorney of record until substitute counsel could be retained and to assist in seeking substitute counsel. The first attorney did so without compensation so that his clients would not be prejudiced.

From November 1993 until March 1995, mostly on his own volition, the first attorney sought substitute counsel. At least eight or nine potential substitute counsel were identified and participated in discussions or review of the file containing three large folders. Finally, in March 1995, the second attorney was retained. During this time, without compensation, the first attorney was truly serving as an officer of the court.

Accordingly, this court believes that the periods of time between October 1993 to March 1995 and from March 1995 to July 1996 are totally excusable under the admonition that each case must be examined on its merits as recently set forth by our Supreme Court in *Marino*. As in *Marino*, the instant case is a "perfect example of activities and circumstances which, in combination, justify a delay in docket inactivity though each circumstance alone might be insufficient."

The order of the trial court is reversed and this matter is remanded to the trial court for further proceedings on the merits.[5]

## ORDER

NOW, this 3rd day of June, 1998, the order of the Court of Common Pleas of Allegheny County, dated April 4, 1997, at No. GD92–18408, is reversed and this matter is remanded to the trial court for proceedings on the merits.

Jurisdiction relinquished.

FLAHERTY, Judge, concurring.

I agree with the result in this case because *Jacobs v. Halloran*, —— Pa. ——, 710 A.2d 1098 (1998), in effect, overruled the two-year

---

4. We note that the record fails to show any factual evidence of Defendants being prejudiced.

5. As we have held that a compelling reason existed for the delay, we need not examine whether Defendants were actually prejudiced by the delay.

presumption of prejudice set forth in *Penn Piping, Inc. v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992), and *Marino v. Hackman,* —— Pa. ——, 710 A.2d 1108 (1998), permitted non-docket activity to be considered. The majority opinion needlessly criticizes the opinion of the trial court which correctly decided this case based on *Penn Piping,* which was the then prevailing law and, further, does the trial court a discourtesy by not pointing out that the trial court made its decision before *Halloran* and *Marino* were published, and did not have the benefit of hindsight, as this court did.