**BARR STREET CORPORATION, d/b/a Horizon Senior CARE, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent**

**Ellen Memorial Health Care Center, Petitioner**

v.

**Department of Public Welfare, Respondent**

**Barr Street Corporation, d/b/a Horizon Senior Care, Petitioner**

v.

**Department of Public Welfare, Respondent**

**Ellen Memorial Health Care Center, Petitioner**

v.

**Department of Public Welfare, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 9, 2005.
Decided Sept. 6, 2005.

Doreena Craig Sloan, Harrisburg, for petitioners.

Jason W. Manne, Sr. Asst. Counsel and John A. Kane, Chief Counsel, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Barr Street Corporation d/b/a Horizon Senior Care (Horizon) and Ellen Memorial Health Care Center (Ellen Memorial) (collectively referred to as Petitioners) petition for review of orders, which dismissed their consolidated administrative appeals relating to medical assistance program reimbursements for periods prior to 1996. The appeals were dismissed due to lack of activity. We now vacate and remand.

Horizon and Ellen Memorial are medical assistance program nursing facility providers. It appears that beginning in the 1980's, Petitioners filed numerous administrative appeals with the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA), contesting various actions taken by DPW, including audits, that affected their medical assistance reimbursement for various fiscal periods, all ending prior to January 1, 1996.

According to Petitioners, during the filing periods at issue, BHA acknowledged receipt of appeals and transmitted to the parties a form entitled "praecipe for certification," along with an "informational pamphlet" which explains the pre-hearing procedures and the means by which certification is accomplished. (R.R. at 325a). The informational pamphlet states that "the setting of a hearing date will not occur until such time as the parties ... certify that all pre-hearing activity has been completed.... Certification must occur within 120 days from the date of the accompanying letter unless a request for

an extension of time or a general continuance has been specifically granted...." The information pamphlet instructs an appellant to contact DPW legal representatives within ten·(10) days to clarify legal issues and attempt to resolve the appeal. It also directs the parties to exchange information within thirty (30) days. In the event that an appeal can not be resolved between the parties, the instructional pamphlet provides as follows:

> In the event that resolution of the matters at issue is not possible, and the parties determine that a hearing is necessary, the parties must jointly prepare a formal written submission which includes: (1) a statement of the issue or issues under appeal: (2) the identification, numbering, and limitation of exhibits; (3) a stipulation of facts not in dispute; (4) the identification of witnesses for each party who will appear at the formal hearing and a short summary of the testimony expected from each witness; (5) the identification of any other matters that must be dealt with to expedite the orderly conduct and disposition of the formal hearing; and (6) three mutually acceptable hearing dates following approximately 45 days from the date of certification. The above specified items should be submitted ... together with a properly completed Praecipe for Certification.

(R.R. at 325a).

The informational pamphlet further explains that after receipt of the praecipe for certification, the matter would be assigned to a hearing officer who would schedule the matter for a hearing as soon as possible, often within forty-five (45) days. (R.R. at 325a). It also contains the following notice: "IMPORTANT: It is extremely important that the parties adhere to the instructions contained in this pamphlet. Failure of either party to comply with the

procedures stated herein may result in the dismissal of the appeal or dismissal of [DPW's] proposed action." (R.R. at 325a).

By order dated February 21, 1997, Petitioners' administrative appeals were consolidated, along with those of more than twenty (20) other medical assistance providers, for purposes of hearing and discovery. The appeals were supposedly consolidated because they involve a common legal issue relating to the validity or application of certain DPW regulations that were referred to as "moratorium regulations." (R.R. at 165a–173a). The order provides, in part, that a "hearing is to be scheduled, subject to completion of full and fair discovery, preparation of prehearing stipulations of facts not in dispute, and such other prehearing statements and positions as may be ordered by the Attorney Examiner, on or after April 1, 1997...." (R.R. at 165a). It further notes that the order does not preclude the parties from discussing or resolving, apart from hearing, any other issues arising within the appeals...." *Id.* The order identifies by docket number twelve (12) administrative appeals filed by Horizon and nineteen (19) administrative appeals filed by Ellen Memorial.[1] (R.R. at 166a–167a).

By letter dated February 25, 1997, BHA requested that the parties confer with each other and report the progress of their settlement negotiations to BHA. (R.R. at 174a). A pre-hearing conference was conducted on March 18, 1997. The record reveals that in preparation for the pre-

hearing conference and/or in response to the earlier letter from BHA, counsel for Petitioners submitted to BHA a letter, dated March 17, 1997. (R.R. at 176a). In the letter, counsel for Petitioners, Charles O. Barto, Jr., from the law firm Charles O. Barto, Jr., and Associates (the Barto Firm), identified additional discovery that they wished to obtain and noted that depositions may be required. *Id.* In addition, Mr. Barto stated that Petitioners would continue efforts to obtain outstanding discovery from DPW.

The record reveals that by letter dated April 7, 1997, Mr. Barto supplemented Petitioners' discovery request by asking that DPW provide information regarding anticipated witnesses and exhibits. (R.R. at 177a).

It appears that on May 22, 2002, more than five years later, Mr. Barto withdrew his appearance on behalf of Horizon in eleven (11) matters, and Donald R. Reavey, Esquire, with the law firm of Cappozi & Associates, P.C. (the Capozzi Firm), entered his appearance.[2,3] (R.R. at 184a–194a, 370a).

The documents relating to the entry and withdrawal of appearances were the first activity recorded on the docket in the appeals since the consolidation order, dated February 21, 1997, with the exception of the settlement letter, dated April 7, 1997. It appears that the settlement negotiations were terminated sometime in June, 1997.

---

1. It is not clear from the record before us what steps were taken to move the various administrative appeals forward after they were filed and prior to February, 1997.

2. The parties represent in their briefs that on May 22, 2002, the Barto Firm withdrew its appearance and the Capozzi Firm entered its appearance. While not disputing such occurrence, we note that the reproduced record contains only unsigned and undated withdrawal of appearance forms, which appeared to have been received by BHA on May 22, 2002, purporting to substitute the appearance of Mr. Barto for that of Mr. Reavey in some Horizon cases. (R.R. at 184a–194a).

3. In addition, the briefs suggest that an entry of appearance was filed on October 26, 1998, relating to a single administrative appeal of Ellen Memorial.

Another year later, by letter dated April 9, 2003, Petitioners, through the Cappozzi Firm, sought to reopen the Horizon settlement negotiations. (R.R. at 214a). In response, DPW took the position that it was not interested in reopening settlement discussions, and that it would seek to dismiss the appeals for inactivity. (R.R. at 214a). Thereafter, it appears that Petitioners responded by filing a motion for depositions. (R.R. at 214a).

On June 9, 2003, BHA issued a rule to show cause, directing Petitioners to explain why their appeals should be not dismissed for inactivity. (R.R. at 211a). The rule to show cause read as follows, in part:

> Pursuant to 1 Pa.Code § 35.14, you are hereby ORDERED to show cause, if any, why the above captioned appeals ... should not be dismissed. Per Order dated February 21, 1997, ... the parties were granted a continuance so as to provide an opportunity to complete their discovery, prepare stipulations of facts not in dispute and otherwise prepare for a formal hearing on the merits. To date, no action by the parties appears in the record.

(R.R. at 211a).

DPW responded to the rule to show cause, requesting that the matters be dismissed. (R.R. at 214a). It cited Petitioners' "prolonged unexplained failure to prosecute their appeals." (R.R. at 214a). While DPW argued that a showing of prejudice was unnecessary for the dismissal of an administrative appeal, it nevertheless took the position that prejudice existed because of the death of witnesses and the loss of documentary evidence.

In support of its motion to dismiss, DPW filed the declaration of Ian Cohen, a supervisor in DPW's Bureau of Long Term Care Programs (the Bureau), and the declaration of Jason W. Manne, a senior attorney in DPW's office of legal counsel.

Mr. Cohen's declaration stated, in part, the following:

> 3. Some of the above captioned appeals may challenge the legality and interpretation of [DPW's] so-called "moratorium" regulations that limit reimbursement of depreciation and capital interest related to certain "new or additional beds" under the former cost-reimbursement methodology that was in effect until January 1, 1996....
>
> 4. The moratorium regulations were developed and promulgated in the early 1980's. Due to the passage of time, there is no longer any individual currently employed by the Bureau who was involved in the development and promulgation of the moratorium regulations.
>
> 5. Due to the passage of time, I believe it is impossible to reconstruct with certainty all the information that was considered by [DPW] decision-makers relative to the promulgation of the moratorium regulations.
>
> 6. Some of the above-captioned appeals may involve challenges to audit findings for fiscal years between 1987 and 1992.
>
> 7. Mr. Richard Keiser was the individual who issued audits covering this period.
>
> 8. Mr. Keiser supervised the audit section and would have had personal knowledge of the audit practices in effect during the periods at issue. Mr. Keiser died in 1999 and therefore he is unavailable to assist [DPW] as a witness.
>
> 9. During 1994 and 1995, Coopers and Lybrand performed audits for the Bureau under contract. Coopers and Lybrand has since been acquired by another accounting firm, and the DPW contract with [sic] has long since expired.

10. Due to the passage of time, it would be difficult to obtain testimony from the Coopers and Lybrand auditors who performed the audits.

(R.R. at 227a–228a).

Mr. Manne's declaration stated that the files for four (4) of the Horizon appeals were either lost or inadvertently destroyed during the prolonged periods of inactivity associated with the cases. Further, according to the files that Mr. Manne had, Mr. Sholtz, now deceased, was the auditor for one of the missing appeals, and Coopers and Lybrand was an auditor for another one of the missing appeals. Mr. Keiser, also now deceased, supervised both of the audits. Mr. Manne also stated that according to the files, these cases challenge the validity and application of the DPW's moratorium regulations. (R.R. at 229a).

The declaration of Mr. Cohen, but not Mr. Manne, was made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

After being granted an extension of time to file a response because the rule to show cause was sent to the Barto firm, Petitioners responded by requesting that the status of the appeals remain active, that a final discovery schedule be established and that the appeals be scheduled for hearing.

On September 27, 2004, BHA issued a recommendation made by Karen Castelli, Esquire, Adjudicating Official (the Adjudicating Official). The Adjudicating Official recommended the dismissal of the consolidated appeals because Petitioners had failed to pursue their appeals. The Adjudicating Official found that since the filing of the consolidated appeals, at least two (2) potential witnesses for DPW have died and the auditor, Coopers and Lybrand, had ceased to be under contract with DPW. (Findings of Fact numbers 34 and 35). The Adjudicating Official also noted in the discussion that there is no longer any individual employed by the Bureau who was involved with the promulgation of the moratorium regulations.

By order dated October 18, 2004, BHA, through Chief Administrative Law Judge Cheffins, adopted the recommendation in its entirety, thereby dismissing the administrative appeals for lack of activity. Petitioners petitioned for reconsideration from the Secretary of DPW, but the Secretary took no action.

Petitioners timely filed with this Court petitions for review from the order of BHA, dated October 18, 2004.[4] Additionally, after the Secretary of DPW failed to act on their petitions for reconsideration within the time permitted, Petitioners timely filed with this Court petitions for review from the deemed denial of their petitions for reconsideration.[5] The matters are consolidated for our consideration.

On appeal,[6] Petitioners argue that the orders should be reversed and these matters remanded for hearing on the merits because they are contrary to law, not supported by substantial evidence and violate their Constitutional rights. They take the position that BHA lacked the authority to dismiss the appeal, particularly in the

---

4. *See* the petitions for review docketed at 2463 C.D.2004 and 2464 C.D.2004, filed by Horizon and Ellen Memorial, respectively.

5. *See* the petitions for review docketed at 2509 C.D.2004 and 2510 C.D.2004, filed by Horizon and Ellen Memorial, respectively.

6. This Court's standard of review is limited to determining whether the adjudication is in accordance with the law, does not violate constitutional rights, and is supported by substantial evidence in the record. *Burch v. Department of Public Welfare*, 815 A.2d 1143 (Pa.Cmwlth.2002).

absence of a violation of a rule or order by Petitioners and in the absence of a specific rule authorizing dismissal. Also, Petitioners argue that the legal and factual requirements for dismissing an action on the basis of non pros were not met, and that they were denied due process. They also argue that the Secretary of DPW's failure to grant reconsideration violated DPW's duty of good faith and fair dealing and constituted an abuse of discretion.[7]

█ Petitioners essentially argue that BHA lacked the authority to dismiss the administrative appeals in the absence of a failure to comply with a rule or order on the part of Petitioners. They also take the position that the administrative appeals at issue were not stale and that they were prepared to move forward with the prosecution of them. They point to the fact that many of the appeals had previously been certified, and that the order dated February 21, 1997, assigned these matters for a hearing to be scheduled after April 1, 1997.[8]

Petitioners note that BHA never requested a status report, never entered any orders directing the parties to take any steps to move the appeals forward and never provided Petitioners with any advance notice that failure to move the matter forward after a period of perceived inactivity would result in dismissal. Also, had BHA or DPW wished to move the appeals forward, a conference to expedite hearing could have been scheduled. *See* 1 Pa.Code §§ 35.111—35.112.

Petitioners contend that where all parties, including Petitioners and DPW, had previously certified these matters for hearing, BHA's obligation was to schedule the hearing, which it did not do. Where both DPW and BHA have failed to take action to move these matters to hearing, DPW, not Petitioners, must bear the burden of such delay, since DPW was an active party in these cases and had a duty to keep abreast of all developments in the appeal process.[9] Moreover, Petitioners further

---

7. The issues to be considered as outlined in the statement of questions were presented in a haphazard manner that did not correspond with the organization of the arguments advanced. We have restated the issues presented to this Court for the sake of convenience and coherence.

8. Petitioners assert that the problems that are presented in these appeals arise because DPW and BHA have established informal procedures, without amending 1 Pa.Code, Part II, that encourage the parties in provider appeals to take all steps possible to settle their disputes. The informal procedures require *both* parties to take actions to prepare the appeals for hearing by requiring them to jointly file prehearing submissions. Also, neither the General Rules of Administrative Practice and Procedure nor DPW's informal procedures establish a time limit for attempting to resolve disputes or for moving matters to hearing, although the setting of the hearing date is within the discretion of BHA.

9. Petitioners cite *Gombocz v. Department of Transportation, Bureau of Driver Licensing,*

849 A.2d 284 (Pa.Cmwlth.2004), *petition for allowance of appeal granted,* 581 Pa. 683, 863 A.2d 1150 (October 28, 2004), in support of their assertion that delay must be attributed to DPW. In *Gombocz,* this Court recognized that an appellant generally has the burden of moving the case forward, but recognized circumstances that could, in effect, shift that burden. In that case, a license suspension hearing was scheduled in the Court of Common Pleas of Lehigh County, and the Department of Transportation (DOT) moved to have the case transferred to the Court of Common Pleas of Bucks County (trial court), even though it could have tried the case in the Court of Common Pleas of Lehigh County. After the case was transferred to the trial court, counsel for the licensee filed an order for hearing, a letter to the court administrator stating that the licensee was seeking a hearing, and a motion for hearing. After the case was transferred, DOT did nothing to move the case forward until more than four (4) years later, when it moved to dismiss the appeal for lack of prosecution. The trial court denied the motion, and we affirmed the denial. We

note that DPW had certified these matters as ready for hearing prior to the date that any of the witnesses at issue died or left employment with DPW, and that DPW had jointly agreed to the continuance of the matters. DPW took no action to preserve the testimony of its staff or witnesses during the pending continuance or establish a hearing date.

Petitioners also argue that factual disputes exist concerning the "actual prejudice," and, therefore, BHA was required to conduct a hearing on the merits in order to provide due process. Moreover, Petitioners allege that DPW did not meet the standards for judgment non pros pursuant to the requirements of the Supreme Court's holding in *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), in that Petitioners failed to establish actual prejudice. Furthermore, the order in question focuses on prejudice relating to DPW's defense only of the "moratorium issues" and makes no findings of prejudice at all with respect to DPW's ability to adequately prepare a defense of any of the other issues involved in the appeals. Also, the "evidence" that DPW submitted to BHA in support of the grant of judgment for non pros consisted of unsworn declarations, which were not affidavits and cannot be afforded the same legal weight.

DPW counters that the administrative appeals had been inactive for nearly six (6) years, and that BHA has the inherent authority to manage its own docket by dismissing stale cases. DPW argues that

Petitioners were supposed to be engaged in discovery and that they were not awaiting a hearing date. Petitioners did not conduct discovery, and, in fact, did nothing to move this matter forward during the six (6) years after the order dated February 21, 1997, was issued. It takes the position that BHA was not required to hold an evidentiary hearing on this matter because Petitioners waived their entitlement to such. Moreover, DPW argues that BHA applied the proper legal standard, concluding that DPW was prejudiced by the passage of time in that two (2) witnesses died and documents have been lost. BHA's findings were supported by the affidavits submitted by DPW in connection with its briefs relating to the motion to dismiss for non pros.

The administrative appeals at issue are subject to the General Rules of Administrative Practice and Procedure, found in Title I, Part II of the Pennsylvania Code, 1 Pa.Code §§ 31.1—35.251, which do not specifically address the dismissal of appeals based upon non pros or failure to comply with an order or rule.[10] However, the General Rules of Administrative Practice and Procedure authorize parties to file motions without regard to limitation, *see* 1 Pa.Code §§ 35.177—35.180, and authorize the presiding officer to dispose of motions to dismiss if such disposition is part of his recommendation for a final agency determination, *see* 1 Pa.Code § 35.187.

Moreover, while agencies do not have the full breadth of inherent powers exer-

---

concluded that the delay was attributable to DOT, and that even if counsel for the licensee could have and should have continued his efforts to move the case forward, a comparison of counsel's efforts to obtain a hearing and DOT's complete failure to attempt to move the case forward "militates in favor of attributing the delay primarily" to DOT. We distinguished the *Gombocz* case from *Tarka v.*

*Department of Transportation, Bureau of Driver Licensing*, 756 A.2d 138 (Pa.Cmwlth.2000), in which no evidence was produced to establish that the licensee made any effort to move the case forward during a three (3)-year gap in the docketed proceedings.

10. DPW has not adopted separate regulations for such appeals relating to the subject of dismissal.

cised by Pennsylvania courts, our courts have recognized the inherent power of agencies to control their own dockets through the dismissal of appeals where parties have failed to comply with a rule or order. *See Burch* (Court affirmed a dismissal of an appeal where applicant failed to prosecute the matter and failed to respond to notice for prehearing conference and to rule to show cause and to motion to dismiss); *Greensburg Nursing and Convalescent Center v. Department of Public Welfare,* 159 Pa.Cmwlth. 391, 633 A.2d 249 (1993) (Court affirmed dismissal of appeal for repeated failure to meet prehearing requirements and to respond to prehearing requests to specify issues involved in appeal); *Goetz v. Department of Environmental Resources,* 149 Pa.Cmwlth. 230, 613 A.2d 65 (1992), *petition for allowance of appeal denied,* 533 Pa. 663, 625 A.2d 1196 (1993) (Court affirmed the dismissal of an appeal after repeated failures by appellant to file pre-hearing memorandum); *Lee v. Department of Public Welfare,* 105 Pa.Cmwlth. 211, 523 A.2d 1188 (1987) (Court affirmed dismissal of appeal where party did not have good cause for failure to appear at hearing after a continuance was denied).

Petitioners contend that those cases may be distinguished from the one at hand in that they all involved a party's repeated failures to respond to requests made or notices issued by DPW or a failure of a party to appear at a hearing without good cause. In the case at hand, Petitioners did not ignore repeated requests or disregard a notice or fail to appear at a hearing. However, such distinction does not render BHA powerless to dismiss a case through the grant of judgment non pros. In *Burch,* this Court recognized the authority

of DPW to remove a stale matter from its docket, provided that due process is afforded to the parties. The key to determining whether dismissal of an administrative appeal on the basis of non pros is proper lies with whether the requirements for non pros were met and whether the parties were afforded due process—not whether the parties have failed to comply with a rule or order. Therefore, we must examine those issues to determine whether the dismissal was proper.

In *Captline v. County of Allegheny,* 553 Pa. 92, 718 A.2d 273 (1998), which originated before a court of common pleas and which involved the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903, the Supreme Court explained when a grant of a judgment of non pros was proper. The Supreme Court's guidance on that issue is instructive for the case at hand. The Supreme Court wrote, as follows:

> The question of whether to grant a judgment of non pros due to the plaintiff's failure to prosecute his action within a reasonable time is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Jacobs v. Halloran,* 551 Pa. 350, 710 A.2d 1098 (1998). In Jacobs, we recognized that the two year presumption of prejudice adopted in Penn Piping [11] had become unworkable. As a result, we returned to the test set forth in *James Brothers Company v. Union Banking and Trust Company of DuBois,* 432 Pa. 129, 132, 247 A.2d 587, 589 (1968), which required the showing of actual prejudice to the defendants from the delay in prosecution. Accordingly, we held:

11. *Penn Piping, Inc. v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992).

To dismiss a case for inactivity pursuant to a defendant's motion for non pros there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reasons for the delay. Finally, the delay must cause *actual* prejudice to the defendant.

*Id.* at 358, 718 A.2d 273, 710 A.2d at 1103 (emphasis supplied).

*Captline,* 553 Pa. at 94–95, 718 A.2d at 274.

Prejudice has been defined as "any substantial diminution of a party's ability to properly present its case at trial." *Jacobs,* 551 Pa. at 359, 710 A.2d at 1103 (*citing Metz Contracting, Inc. v. Riverwood Builders, Inc.,* 360 Pa.Super. 445, 520 A.2d 891 (1987), *petition for allowance of appeal denied,* 515 Pa. 623, 531 A.2d 431 (1987)). In *James Brothers* and *Jacobs,* the Supreme Court acknowledged that prejudice could be established by the death or absence of a material witness.

This Court, in determining whether a grant of a judgment of non pros was appropriate, stated that "a cause of action is property, and a person cannot be deprived of property without notice and an opportunity to be heard." *Tri–State Asphalt Corporation v. Department of Transportation,* 875 A.2d 1199, 1202 (Pa.Cmwlth.2005). We further stated that "upon the filing of a petition for a judgment of non pros, it is essential that the person bringing the original action have notice, and an opportunity to be heard." *Tri–State Asphalt,* 875 A.2d at 1202. We find the *Tri–State Asphalt* case to be instructive in the instant matter.

In *Tri–State Asphalt,* this Court was presented with a petition for review from an order of the Board of Claims (Board), which granted DOT's motions for entry of judgment non pros and discovery sanctions, cancelled a scheduled pre-trial conference and hearing, and dismissed Tri–State Asphalt's complaint against DOT. In 1990, Tri–State Asphalt had filed an action with the Board, asserting various breaches of a construction contract. Substantial docket activity occurred in 1990 and 1991. For the next ten (10) years, the Board periodically requested and received status reports on the case.

On May 3, 2004, the Board issued a scheduling order requiring that all depositions and discovery be completed by September 22, 2004, and that pre-trial statements of the parties be filed by October 1, 2004. A pre-trial conference was scheduled for October 8, 2004, and pre-trial motions were due by October 15, 2004. Hearings were scheduled, beginning in late November, 2004.

On August 10, 2004, prior to any of the deadlines established by the scheduling order, DOT filed a motion for entry of judgment non pros. On that same day, DOT served its first set of interrogatories upon Tri–State Asphalt. When DOT had not received a response by September 23, 2004, one (1) day after the discovery deadline established by the scheduling order, DOT filed a motion for discovery sanctions.

On October 7, 2004, without holding a hearing, the Board granted both of the motions filed by DOT, cancelled the pre-trial conference and hearing, and dismissed the complaint with prejudice. The Board found that DOT was prejudiced by the delay because witnesses' memories had faded, witnesses had disappeared and documents had become lost or destroyed. In making that determination, the Board relied on an affidavit of an assistant construction engineer for DOT, which affidavit was attached to DOT's motion. The affidavit stated that (1) the majority of DOT's witnesses had retired; (2) the recollection

of the witnesses who spoke to the assistant construction engineer about the case have faded with respect to the details of the work performed by Tri–State Asphalt; (3) the assistant construction engineer attempted to gather all records relating to the case and found some contract records missing; and (4) the assistant construction engineer was told that some DOT records were destroyed in a fire.

Tri–State Asphalt petitioned for review, arguing that because the Board never held a hearing to determine whether DOT was prejudiced by the delay, there was no evidence of record. This Court agreed, and we remanded the matter for an evidentiary hearing. In reaching that determination, we wrote:

> First, even if the majority of DOT's witnesses have retired, they have not disappeared. Second, [the assistant construction engineer's] statement regarding what other unnamed witnesses told him about their fading recollections is hearsay. Therefore, the statement is insufficient to support a Board finding that witness memories have faded. Third, [the assistant construction engineer's] statement about his attempt to gather all records relating to this case does not indicate whether he attempted to obtain the missing contract records from Tri–State or whether the missing records would prejudice DOT's ability to present its case. Finally, [the assistant construction engineer's] statement that unnamed individuals told him that a fire destroyed DOT records is hearsay. Therefore, the statement is not sufficient to support a finding that documents have been destroyed.

> Based on the foregoing, we conclude that the Board's entry of a judgment of non pros for failure to prosecute, or inordinate delay, without holding a hear-

ing to take admissible evidence on the matter was manifestly unreasonable.

*Tri–State Asphalt*, 875 A.2d at 1202–03.

The declarations submitted in the appeals before us suffer from many of the same problems as the affidavits submitted in *Tri–State Asphalt*. The declarations do not fully address whether witnesses are available and whether their memories have faded. The declarations do not describe attempts made to obtain missing documents from other sources, nor do they address whether the missing documents would prejudice DPW.

Additionally, the declaration of Mr. Cohen does not necessarily establish prejudice for all of the appeals. He states in the declaration that "some of the . . . appeals may challenge . . . the moratorium regulations" and that "some of the appeals may involve challenges to audit findings" between 1987 and 1992. (R.R. at 227a–228a).

Moreover, Petitioners offer numerous arguments challenging whether DPW has suffered actual prejudice and/or proven actual prejudice. For instance, with regard to the unavailability of witnesses, Petitioners argue that several individuals who had worked for the Bureau and who had been involved in "moratorium issues" continued to work for DPW or other Commonwealth agencies and that DPW had not established that they were not available. Also, while DPW no longer had a contract with the former auditing firm, Petitioners argued that DPW had not established that the witnesses could not be subpoenaed to testify. Petitioners even challenged whether many of these so-called "expert witnesses" were necessary to DPW's defense. Furthermore, Petitioners identify a current employee of the Bureau who was involved in "moratorium issues," including Horizon's audits. Petitioners also argue that some testimony has been preserved

by DPW in other cases involving similar matters and that, in the past, DPW had secured the testimony of former employees in similar matters. In addition, Petitioners argue that in *Baldwin Health Center v. Department of Public Welfare*, 755 A.2d 86 (Pa.Cmwlth.2000), DPW's current Chief Counsel, Mr. Kane, testified concerning the intent and application of the moratorium regulations involved in some of the appeals and that he is still available to testify. It appears that Petitioners also argue that DPW was able to mount defenses in other cases that involved similar issues, and, therefore, it is uncertain why DPW cannot do the same in the appeals at hand.

Also, with regard to lost documents, Petitioners note that DPW did not allege that any document material to its defense of the "moratorium issues" had been lost or destroyed and could not be reconstructed from Petitioners' files or other sources. Petitioners further note that although the declaration of Mr. Cohen, an employee of the Bureau, alleged that he did not believe that it was possible to reconstruct with certainty all the information that was considered by DPW relative to the promulgation of the "moratorium regulations," BHA found that the promulgation was not at issue—only the application. Moreover, Mr. Cohen's declaration did not reflect any consultation with others involved in the

development and promulgation of the regulations. Finally, Petitioners contend that they should not be penalized for DPW's loss of its own files.

Petitioners further assert that there are more issues involved than those related to moratorium regulations. They contend that only one of the Ellen Memorial appeals involves moratorium regulations and that many of the Horizon appeals involve moratorium regulations and other issues. They take the position that there has been no showing that DPW cannot move forward on these other issues.

Given the arguments that Petitioners have raised that call into question the actual prejudice suffered by DPW and the paucity of information provided in the declarations submitted by DPW in light of this Court's opinion on *Tri–State Asphalt*, we must conclude that DPW's motion to dismiss and supporting evidence is insufficient to establish actual prejudice. The matters must be remanded for an evidentiary hearing or hearings to allow for due process and development of the relevant evidence.

Accordingly, the orders must be vacated and the matters remanded to BHA for an evidentiary hearing or hearings consistent with this opinion in order to determine whether judgment by non pros is appropriate in each of the administrative appeals at issue.[12,13,14,15,16] After a hearing is conduct-

12. Petitioners further argue in their reply brief that the unsworn declarations submitted by BHA did not constitute appropriate evidence for consideration by BHA because they were not sworn affidavits. This issue was not briefed by DPW, and we make no determination as to whether it is properly before us at this time. Rather, we need not address such issue because we already have concluded that the declarations are insufficient to support judgment for non pros and that the appeals must be remanded for an evidentiary hearing or hearings.

13. DPW advances the arguments that BHA adequately considered off-record settlement activity and that any argument by Petitioners that they were awaiting or expecting a hearing date to be scheduled is untimely, not supported by the record and barred by the doctrine of judicial estoppel. However, we have concluded for unrelated reasons that BHA's dismissal was improper. Hence, we need not address those arguments raised by DPW, as they would not alter the disposition of these matters.

14. DPW also asserts that Petitioners have waived their right to an evidentiary hearing.

ed, BHA may conclude that judgment non pros is appropriate with regard to all, some or none of the issues raised in the administrative appeals.

## ORDER

AND NOW, this 6th day of September, 2005, the orders that are the subject of the petitions for review in the above-captioned actions are hereby vacated and the matters remanded to the Department of Public Welfare, Bureau of Hearings and Appeals, for an evidentiary hearing or hearings, consistent with the attached opinion.

Jurisdiction is relinquished.

In support of that assertion, DPW cites to a transcript of a pre-hearing conference, held on May 26, 2004, before Administrative Law Judge Brown (ALJ Brown). However, we must conclude that the transcript does not support such an assertion. The pre-hearing telephone conference addressed discovery matters and Petitioners' motion to schedule the appeals for hearing. DPW's counsel objected, noting that its motion to dismiss was currently pending before Administrative Law Judge Peffley (ALJ Peffley). ALJ Brown did not have all the paperwork relating to that matter, and counsel for DPW agreed to provide her with it (at a later time) so that everyone had the same papers in front of them. At one point during the conference, Petitioners' counsel asked what ALJ Brown wanted them to do from there. ALJ Brown replied that "[i]t sounds like the ball's in our court, to answer this motion to dismiss...." Other motions would be addressed if BHA denied the motion to dismiss. There was no discussion regarding the procedures to be employed regarding the motion to dismiss, no discussion whether a hearing would be necessary or whether the matter should be decided on briefs. The discussion that took place did not even involve the ALJ that was assigned the motions to dismiss. Additionally, the order from BHA that ultimately dismissed the appeals was issued Chief Administrative Law Judge Cheffins. Neither the recommendation nor order makes any mention of Petitioners having waived an evidentiary hearing. Under these circumstances, we cannot conclude that any of the statements made by Petitioners' counsel constituted a waiver of an evidentiary

hearing and/or waiver of due process entitlement.

Even if we were to conclude that Petitioners waived their right to an evidentiary hearing, that would not result in an affirmation of BHA's dismissal of the administrative appeals through the entry of judgments of non pros. Rather, we would still have to conclude that judgment non pros was improper because of the problems discussed above relating to the unsworn declarations and their failure to establish actual prejudice. By remanding the matter, both parties may fully develop at hearing the evidence they wish to have considered in connection with the motion to dismiss.

15. In *Tri–State Asphalt*, we also noted "[w]here a delay in prosecuting a case is attributable to the defendant as well as the plaintiff, the defendant has waived his or her right to a judgment of non pros." *Tri–State Asphalt*, 875 A.2d at 1203, n. 9. In that case we noted that "after a hearing, the Board might find that there was mutual procrastination consistent with DOT's waiver of Tri-State's delay in the proceedings." *Tri–State Asphalt*, 875 A.2d at 1203, n. 9. In the case at hand, after a hearing BHA may similarly find that mutual procrastination occurred in the instant case.

16. As we have concluded that the orders issued by BHA must be vacated and the matters remanded to BHA for evidentiary hearings, we need not address Petitioners' argument that the Secretary of DPW's failure to grant reconsideration was an abuse of discretion.