J-A01041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHRISTOPHER R. LINK AND HEATHER A. LINK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| DENNIS LINK, INDIVIDUALLY AND AS CUSTODIAN FOR CHRISTOPHER R. LINK AND HEATHER A. LINK, PURSUANT TO THE PENNSYLVANIA UNIFORM GIFT TO MINORS ACT, | |
| Appellee | No. 738 WDA 2014 |
| v. | |
| ELISABETH LINK, | |
| Appellee | |

Appeal from the Decrees entered February 11, 2014 and April 14, 2014,
in the Court of Common Pleas of Beaver County,
Orphans' Court, at No(s): 04-02-435A

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED FEBRUARY 4, 2015**

Christopher R. Link and Heather A. Link, ("Appellants"), appeal from the trial court's decrees dismissing their Petition for Accounting of Custodial Accounts and for Turnover of Funds Removed from Custodial Accounts, and Motion for Post-Trial Relief.  We affirm.

Our review of the record reveals the following:  Respondent Dennis Link ("Father"), is the father of Appellants.  Additional respondent Elisabeth Link, now known as Elisabeth Pflugh ("Mother"), is the mother of Appellants.

Father and Mother separated in 1994 and were divorced in 2001. N.T., 5/20/13, at 21, 23. Appellant Christopher Link was born on February 20, 1976, and turned 18 on February 20, 1994. N.T., 5/20/13, at 21.

Appellant Christopher Link testified that his parents' divorce was "contentious", and that he authorized Mother to represent him in domestic relations proceedings to collect college tuition from Father. *Id*. at 22. Appellant Christopher Link has not spoken to Father since 2001. *Id*. at 23.

It is undisputed that on or about 1979, Father opened Uniform Gift to Minor Accounts ("UGMA") for Appellants. *See id*. at 98-100, 104. Appellant Christopher Link learned about the UGMA accounts from his sisters and his Mother "somewhere between May and August" of 2001. *Id*. at 24-25. In August of 1994, Father paid for a "very small portion", approximately $1,300, of Appellant Christopher Link's college tuition at Robert Morris from one of the UGMA accounts. *Id*. at 30, 32.

Appellant Heather Link was born on April 2, 1979, and turned 21 on April 29, 2000. *Id*. at 33. Ms. Link described learning about the UGMA accounts in the fall of 2000:

> In the fall of 2000 I was accepted to Columbia University, and I went to meet with [Father] to ask him if he would help me pay for tuition. He told me that he couldn't, because he was poor and had no money.
>
> I then went back and talked to my mom and she told me that, you know, there was a college account for us, and then when I asked him about it he told me that I didn't earn the money and I didn't deserve it.

*Id*. at 34. Ms. Link never received any money from an UGMA account. *Id*. at 35. Ms. Link also testified that she knew about the UGMA account in February of 1999. *Id*. at 41.

Father testified to opening UGMA accounts for his children. He stated that the "accounts were withdrawn from and then put into other accounts." *Id*. at 45. He testified that the money was not given to Appellants Christopher and Heather Link, and "neither did I take possession of it." *Id*. Father explained that the money was used to pay "taxes and to buy cars for the family, family expenses." *Id*. at 46. Father testified that by the end of 1994, there was no money left in the UGMA accounts and they had "a zero balance." *Id*. at 95-96.

Mother testified that her divorce from Father lasted six and a half years from 1994 through 2001. *Id*. at 65. Mother learned of the UGMA accounts in 1994. *Id*. at 67-68. Mother testified that Father told her that he was saving for their children's education; she stated she was "sure" Father told the children this. *Id*. at 68. Mother said that she "didn't know anything about the UGMA accounts." *Id*. at 73.

Appellants filed their Petition for Accounting of Custodial Accounts and for Turnover of Funds Removed from Custodial Accounts on April 11, 2002. Docket activity continued until November 13, 2003, with a two and a half year lapse in activity through May 15, 2006, and another nearly two year lapse until March 24, 2008, when an entry of appearance was entered on behalf of Appellants. The trial court explained:

[Appellants] first filed a Certificate of Readiness for Trial on September 18, 2012. Hearing on the Petition was convened on May 20, 2013, over eleven (11) years after the Petition was filed.

Trial Court Memorandum Opinion and Decree, 2/11/14, at 1. On February 11, 2014, the trial court entered a decree dismissing Appellants' petition "for the reasons set forth in the foregoing Memorandum Opinion." Within the Memorandum Opinion, the trial court based its dismissal on "all three (3) grounds raised by [Father's] pleadings as discussed herein", *i.e.*, 1.) the statute of limitations; 2.) the doctrine of laches; and 3.) the equitable remedy of *non pros*.

Appellants filed a motion for post-trial relief on February 21, 2014. The trial court scheduled argument for April 11, 2014, and on April 14, 2014, entered a decree denying Appellants' motion. Appellants filed a timely appeal and statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellants raise three issues:

I. Whether the trial court erred in entering its February 11 and April 14, 2014 Decrees by ruling that the petitioners' action was barred by the statute of limitations.

II. Whether the trial court erred in entering its February 11 and April 14, 2014 Decrees by ruling that the petitioners' action was barred by the doctrine of laches.

III. Whether the trial court erred in entering its February 11 and April 14, 2014 Decrees by ruling that the petitioners' action was barred by the equitable remedy of *non pros*.

Appellants' Brief at 5.

Upon review, and with regard to Appellants' third issue concerning *non pros*, we find that the record supports the trial court's entry of *non pros*, and therefore affirm the trial court on this basis. **See, e.g., Cid v. Erie Ins. Group**, 63 A.3d 787, 791 (Pa. Super. 2013) ("we may affirm on any basis").

On February 21, 2014, after entry of the trial court's February 11, 2014 decree, Appellants filed their post-trial motion challenging, *inter alia*, the entry of *non-pros*. Appellants did not specifically reference Pa.R.C.P. 3051, which provides:

> **Rule 3051. Relief from Judgment of Non Pros**
>
> (a) Relief from a judgment of non pros shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.
>
> (b) Except as provided in subdivision (c), if the relief sought includes the opening of the judgment, the petition shall allege facts showing that
>
> > (1) the petition is timely filed,
> >
> > (2) there is a reasonable explanation or legitimate excuse for the conduct that gave rise to the entry of judgment of non pros, and
> >
> > (3) there is a meritorious cause of action.
>
> ***
>
> (c) If the relief sought includes the opening of the judgment of non pros for inactivity, the petition shall allege facts showing that
>
> > *Note:* The "inactivity" covered by this subdivision is governed by and subject to *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998).
>
> (1) the petition is timely filed,
>
> (2) there is a meritorious cause of action, and

(3) the record of the proceedings granting the judgment of non pros does not support a finding that the following requirements for entry of a judgment of non pros for inactivity have been satisfied:

> (i) there has been a lack of due diligence on the part of the plaintiff for failure to proceed with reasonable promptitude,

> (ii) the plaintiff has failed to show a compelling reason for the delay, and

> (iii) the delay has caused actual prejudice to the defendant.

Pa.R.C.P. 3051(a)-(c).

We recently explained:

> A request to open a judgment of *non pros . . .* is in the nature of an appeal to the equitable powers of the court and, in order for the judgment of *non pros* to be opened, a three-pronged test must be satisfied: 1) the petition to open must be promptly filed; 2) the default or delay must be reasonably explained or excused; and 3) facts must be shown to exist that support a cause of action. *Madrid v. Alpine Mountain Corp.,* 24 A.3d 380, 381 (Pa. Super.2011) (citation omitted); Pa.R.C.P. 3051. A petition under Pa.R.C.P. 3051 is the only means by which relief from a judgment of *non pros* may be sought. *Id.;* Pa.R.C.P. 3051, Comment. "Any appeal related to a judgment of *non pros* lies not from the judgment itself, but from the denial of a petition to open or strike." *Madrid,* 24 A.3d at 381–382 (citation omitted). The "failure to file a timely or rule-compliant petition to open operates as a waiver of any right to address issues concerning the underlying judgment of *non pros.*" *Id.* at 382. Finally, a trial court's decision to deny a petition to open or strike a judgment of *non pros* is reviewed pursuant to an abuse of discretion standard. *Id.* (citation omitted).

**See Bartolomeo v. Marshall,** 69 A.3d 610, 613-614 (Pa. Super. 2013).

Assuming *arguendo* that Appellants' motion for post-trial relief was a *de facto* Rule 3051 petition, our review indicates that it was promptly filed,

but did not meet the second prong of Rule 3051(b) where the default or delay must be reasonably explained or excused. Rather, the essence of Appellants' argument was that by not requesting *non pros* until November of 2012, Father "ha[d] unclean hands as to the application for judgment [of] *non pros*, having filed for such too late, to the prejudice of [Appellants]." Post-Trial Motion, 2/21/14, at 15 (unnumbered). In support of this argument, Appellants cited one Commonwealth Court and one Third Circuit decision. **See Commonwealth v. Thomas**, 814 A.2d 754, 758 (Pa. Super. 2002) (Superior Court not bound by the decisions of the Commonwealth Court); **Werner v. Plater-Zyberk**, 799 A.2d 776, 782 (Pa. Super. 2002) ("federal court decisions do not control the determinations of the Superior Court").

Furthermore, we review a trial court's decision to deny a petition to open or strike a judgment of *non pros* "pursuant to an abuse of discretion standard." **Bartolomeo**, 69 A.3d at 614. In their appellate brief, Appellants contest the trial court's determination that Father suffered prejudice, and assert that "Father's own delay precluded the application of the remedy of *non pros*." Appellants' Brief at 23-27.

With regard to its determination that Father suffered prejudice, the trial court referenced the record and explained:

> [Father] has also filed a Petition for Non Pros for the [Appellants'] failure to prosecute their Petition in a timely fashion. [Father] cites as authority for his position the case of *Jacobs v. Halloran*, 551 Pa. 350, 357, 710 A.2d 1098, 1103 (1998), wherein the Supreme Court of Pennsylvania stated,

- 7 -

"To dismiss a case for inactivity pursuant to a defendant's motion for non pros, there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause actual prejudice to the defendant."

In the case at hand, this Petition was filed on April 11, 2002, and the hearing date was not set for the first time until March, 2013, almost eleven (11) years after the Petition was filed and nineteen (19) years after the accounts were closed with the full knowledge of the primary Custodian and Guardian of [Appellants]. If the docket and the Hearing Transcript do not establish anything else, they do make it crystal clear that both [Appellants] displayed a "lack of due diligence in failing to proceed with reasonable promptitude". A review of the docket, as noted in and attached to [Father's] Petition, reveals that nearly the entire delay was attributable to [Appellants'] failure to prosecute their claims. By way of example, [Appellants] did not file an Answer to [Father']s Preliminary Objections for a period of two (2) years; between November, 2003 and March, 2008, a period of four and one-half (4½) years, the only docket activity to take place was the filing of a Request for Admissions by [Appellants] and a timely response to the same by [Father] in 2006; and, following denial of [Appellants'] Motion for Summary Judgment, twenty (20) months elapsed before [Appellants] filed their Certificate of Readiness for Trial on the Petition. ***In the face of this extended delay, [Appellants] offered no compelling reason for their delay***. It was abundantly clear at the hearing on May 20, 2013 that neither [Appellants] nor [Father] had gathered any admissible evidence which was not otherwise in their possession since 2001.

Finally, [Father] did establish <u>actual</u> prejudice resulting from [Appellants'] delay. As noted in the Motion for Non Pros, the attorney who represented [Mother] in the divorce action passed away in 2009, denying all parties the opportunity to call her as a witness to the events occurring between 1994 and 2001. Furthermore, neither [Father], [Mother] nor [Appellants] were able to produce records from Kemper nor accounting records of the Custodian which were in the marital residence after separation of the parties in 1994. The delay in pursuing the cause of action, and even more so, the delay in prosecuting their claims with reasonable promptitude, caused <u>actual</u> prejudice to [Father].

> Those delays also hamper this Court's ability to award any relief to [Appellants]. The Decree [Appellants] seek is unenforceable when one considers that counsel for [Appellants] acknowledged on the record, as did counsel for [Father], their mutual inability to provide records and an accounting of financial activities that took place between 19 and 34 years ago. The actions of [Father] between 1979 and 1994 were reprehensible at the very least, but because of delays since 1994 which were not of his making, his activities as Custodian are not deemed actionable at this time.

Trial Court Memorandum Opinion and Decree, 2/11/14, at 8-10 (unnumbered, emphasis added). Upon review, we find no abuse of discretion in the trial court's determination.

As to Appellants' argument regarding Father's delay in seeking *non pros*, Appellants continue to rely on Commonwealth Court and federal court decisions which are not binding on this Court. **Thomas**, **supra**; **Werner**, **supra**.

Given the foregoing, we conclude that even had Appellants fully complied with Pa.R.C.P. 3051, the trial court did not abuse its discretion in entering *non pros*. We therefore affirm the trial court.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/4/2015