J-A07038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARIANNE F. GASIOR, AN INDIVIDUAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KENNAMETAL, INC., A PENNSYLVANIA CORPORATION, QUENTIN C. MCKENNA, ROBERT L. MCGEEHAN, RICHARD J. ORWIG, DAVID T. COFER, THE LATROBE BULLETIN, THE GREENSBURG TRIBUNE REVIEW AND MICHAEL MAHADY | |
| Appellees | No. 1375 WDA 2014 |

Appeal from the Order Entered July 25, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 92-13689

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:              **FILED MARCH 20, 2015**

Appellant, Marianne F. Gasior, appeals *pro se* from July 25, 2014 order denying her motion to open a judgment of *non pros* entered in favor of Appellees, Kennametal, Inc. (Kennametal), Quentin C. McKenna, Robert L. McGeehan, Richard J. Orwig, David T. Cofer, The Latrobe Bulletin (Bulletin), The Greensburg Tribune (Tribune), and the Honorable Michael Mahady. After careful review, we affirm.

The trial court summarized the underlying factual history of this case, taken from Gasior's complaint, as follows.

> [Gasior] is an attorney licensed to practice law in the Commonwealth of Pennsylvania.  She resigned

from her previous employment to take a position with Kennametal on May 1, 1989.

On June 26, 1989, she was asked by the Credit Department whether or not the Legal Department had authorized an ongoing exportation of military-related products to Matrix Churchill Company, a company owned by the Republic of Iraq. [Gasior], upon investigation, determined that Kennametal did not have a license to export military-related material to Iraq and attempted to halt the transaction. However, the matter was taken away from [Gasior] by the head of Kennametal's Legal Department (Cofer).

On November 17, 1989, Kennametal's branch in North Carolina and its German branch asked [Gasior] to collect on a letter of credit involving funds owed to Kennametal under Banca Nazionle de Lavoro and the Central Bank of Iraq. [Gasior] was unable to complete this task because of a lack of cooperation within the company.

Shortly after being employed by Kennametal, [Gasior] was subject to physical as well as verbal sexual harassment by Cofer, [Gasior]'s superior in the Legal Department.

Eventually, [Gasior] reported Cofer's sexual harassment to [] Orwig, Vice President of Human Resources, on November 17, 1989. At meetings between December 20, 1989 and January 12, 1990, [] McKenna and Orwig assured [Gasior] that Cofer would stop this behavior and told her that her work performance was more than satisfactory. During a January 12, 1990 meeting with [] McKenna, [Gasior] voiced her objections to Kennametal's proposed scheme to place an agent in the country of Iran.

The next business day, January 15, 1990, Orwig, on behalf of Kennametal, asked [Gasior] for her resignation. She refused. Eventually, on March 27, 1990, there was a settlement in which a payment was made to [Gasior] in exchange for her

signing a separation agreement waiving all rights and claims to sue Kennametal.

After March 27, 1990, [Gasior] continued to socialize with Ann Savis, Kennametal's secretary to McKenna, McGeehan, and Orwig. On December 12, 1990, [Gasior] had a social meeting with Ann Savis at which Barbara Henderson, an agent or employee of Kennametal, appeared. To prevent any information from being exchanged at the social meeting, Ms. Henderson punched, shoved, and slammed [Gasior] into a car door and followed [Gasior].

On December 13, 1990, [Gasior] reported Kennametal's continuing harassment to the U.S. Attorney's Office. On December 14, 1990, [Gasior] contacted the State Police to report the December 12, 1990 incident to Trooper Steven Lapasky. Unbeknowst to [Gasior], Kennametal on the same day called Trooper Lapasky to its headquarters where various employees including Orwig and Henderson falsely alleged that [Gasior] was harassing Ann Savis. The Trooper obtained an arrest warrant, charging [Gasior] with disorderly conduct and harassment from District Justice Mahady based on an affidavit which he executed. On December 16, 1990, an article appeared in the [Bulletin] which falsely stated that [Gasior] has been arrested on December 12, 1990. On January 2, 1991, Trooper Lapasky withdrew the charges.

On January 3, 1991, an article appeared in the [Bulletin] which falsely characterized [Gasior] as a Pittsburgh woman who would face charges of disorderly conduct and harassment.

Since December 12, 1990, Kennametal, through Barbara Henderson, has constantly spread other lies and false statements concerning [Gasior]. The lies include that [Gasior] had sexually harassed Ann Savis and that Ms. Henderson became involved to protect Ms. Savis.

- 3 -

[Gasior]'s [a]mended [c]omplaint lists fifteen companies and organizations to which Kennametal made false and malicious statements regarding [Gasior] to prevent her from obtaining gainful employment.

On January 24, 1991, [Gasior] read an article referring to Kennametal's involvement in illegal military sales to Iraq. She then recalled that during the course of her employment she had innocently stumbled upon information concerning letters of credit and military sales to Matrix Churchill, an Iraqi company. She immediately contacted the FBI and, later, the U.S. Customs Service. On August 1, 1991, [Gasior] appeared before a Congressional subcommittee where she testified as to her knowledge of Kennametal's involvement in illegal military sales to Iraq.

Immediately thereafter, Kennametal engaged in a campaign to discredit, defame, malign, and destroy the professional reputation, integrity, and earning capacity of [Gasior] by falsely disseminating numerous defamatory statements, including statements that her testimony before Congress was untrue. Kennametal publicly characterized [Gasior] as a vengeful former employee making false statements to harm her previous employer and stated that she was fired because she was sexually harassing a female employee.

Thereafter, the [Bulletin] published articles stating that [Gasior] had, in fact, verbally authorized the illegal military sales; that she had spent her life getting even since she left Kennametal; and that [Gasior] had narrowly avoided arrest in 1990 for allegedly harassing a female company secretary. Also, [Gasior] bases a libel claim on an article in the *Trib* stating that [Gasior] had spent her life since she left Kennametal getting even.

Trial Court Opinion, 7/1/14, at 2-4. The trial court summarized the relevant procedural history of this case as follows.

- 4 -

On July 31, 1992, [Gasior] commenced this action by writ of summons. [Gasior] filed a complaint on September 16, 1992 and an amended complaint on January 29, 1993. In her complaint and amended complaint, [Gasior] named the following defendants: Kennametal, Inc., Quentin C. McKenna, Robert L. McGeehan, Richard J. Orwig, and David T. Cofer …. [Gasior] also filed suit against two newspapers – the [Bulletin and Tribune] – and against Michael Mahady, a District Justice in Latrobe, Pennsylvania.

A January 18, 1994 order of [the trial] court transferred this case to the Court of Common Pleas of Westmoreland County. On January 24, 1994, [Gasior] appealed the transfer of venue. On December 22, 1995, the Superior Court reversed [the trial] court's transfer of venue and ordered the record remanded to [the trial] court. [**Gasior v. Kennametal**, 674 A.2d 323 (Pa. Super. 1995) (unpublished memorandum).]

Apart from a substitution of appearance on July 28, 2004 and a withdrawal and entry of appearance on January 24, 2006, the docket remained inactive until Judge O'Brien of [the trial] court *sua sponte*, issued a Notice of Proposed Termination of Court Case on May 17, 2013. In response to the Notice, [Gasior] filed a Statement of Intention to Proceed on July 19, 2013.

Thereafter, the Kennametal Defendants, [Bulletin and Tribune], and Mahady each filed [m]otions for [j]udgment of [*n*]on [*p*]*ros* and briefs seeking dismissal of the case due to inactivity. [Gasior] filed a response and brief in opposition to the motions. The Kennametal Defendant and Mahady filed supplemental briefs.

*Id.* at 1-2. On July 1, 2014, the trial court entered an order granting all motions for judgments of *non pros*. On July 15, 2014, Gasior filed a petition to open the judgment of *non pros* pursuant to Pennsylvania Rule of Civil

- 5 -

Procedure 3051. On July 25, 2014, the trial court entered an order denying

Gasior's Rule 3051 petition. On August 22, 2014, Gasior filed a timely notice

of appeal.[1]

On appeal, Gasior raises one issue for our review.

> Whether the trial court abused its discretion in denying [Gasior]'s [p]etition for [r]elief from [j]udgment of [*n*]on-[*p*]*ros* when her petition was timely filed, showed a meritorious cause of action, and presented compelling reasons for the delay: fear for her physical safety, numerous delays caused by a breakdown in the court system, and [Appellees]' unclean hands[?]

Gasior's Brief at 3.

We begin by noting our well-settled standard of review. "A trial court's

denial of a petition to open a judgment of *non pros* is reviewed using an

abuse of discretion standard." ***Sullivan v. Belmont Ctr. for***

***Comprehensive Treatment***, 848 A.2d 994, 995 (Pa. Super. 2004) (citation

omitted), *appeal denied*, 863 A.2d 1148 (Pa. 2004).

> [I]n order to remove a judgment of *non pros*, three elements must be met: (1) a petition to open must be promptly filed; (2) the delay must be reasonably explained; and (3) facts must be shown to exist which support a cause of action.

---

[1] The trial court did not order Gasior to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court filed a Rule 1925(a) "order" on August 25, 2014, directing this Court to its opinion filed with its original July 1, 2014 order granting the motions for judgments of *non pros*.

*Jacobs v. Halloran*, 710 A.2d 1098, 1101 n.4 (Pa. 1998). Our Supreme Court has held that actual prejudice must be shown to receive a judgment of *non pros*.[2] **Id.** at 1103. In addition, our Supreme Court has emphasized that "[a] party who seeks the equitable relief provided by the entry of a judgment of *non pros* must do so with clean hands." **Id.**

> The doctrine of unclean hands is … far more than a mere banalty. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith …. Thus while "equity does not demand that its suitors shall have led blameless lives" … as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue ….

**Id.**, *quoting* **Shapiro v. Shapiro**, 204 A.2d 266, 268 (Pa. 1964). Our Supreme Court has stated that unclean hands are an affirmative bar to the entry of a judgment of *non pros*, even if the party suffered actual prejudice. **Id.**

---

[2] Appellees do not contest that Gasior's Rule 3051 petition was timely and that her complaint would support a cause of action.

Gasior essentially has four arguments on appeal.[3] Specifically, Gasior argues that she has shown a reasonable explanation for the delay, Appellees came into the trial court with unclean hands, Appellees have not shown actual prejudice, and the trial court was biased. Gasior's Brief at 14, 15, 20, 25. In her first issue, Gasior avers that the trial court erred when it concluded that she has not shown a compelling reason for the delay in the prosecution of her case between our memorandum remanding this case to Allegheny County in December 1995 and 2014 when the motions for judgments of *non pros* were originally filed by Appellees. *Id.* at 14. In her second issue, Gasior argues that Appellees came into the trial court with unclean hands. *Id.* at 16-17. As these issues are interrelated, we will discuss them as one.

We note that the courts of this Commonwealth have consistently stated that it is the plaintiff's burden to keep the case moving forward.

> It is the policy of the unified judicial system to bring each pending matter to a final conclusion as promptly as possible consistently with the character of the matter and the resources of the system. Where a matter has been inactive for an unreasonable period of time, the tribunal, on its own motion, shall enter an order terminating the matter.
>
> Pa.R.J.A.1901, **Prompt Disposition of Matters; Termination of Inactive Cases (a) General**

---

[3] We will address Gasior's arguments in a slightly different order than presented in her brief for ease of disposition.

> **Policy**. The plaintiff in a case has an affirmative duty to move its case forward.
>
>> The law is settled that it is the plaintiff, not defendant, who bears the risk of not acting within a reasonable time to move a case along. If plaintiff's counsel finds [herself] faced with delays created by others, [she] must take action to move the case forward, such as filing praecipes for argument on undecided motions, moving to compel [her] opponent to file a certificate of readiness, or requesting a conference with the judge, as provided by local rule to have the case put on the trial list.
>
> *Pilon* [*v. Bally Eng'g Structures*, 645 A.2d 282, 285 (Pa. Super. 1992), *appeal denied*, 652 A.2d 1325 (Pa. 1994)] (citations and quotations omitted, brackets in original).

*Indep. Tech. Servs. v. Campo's Express, Inc.*, 812 A.2d 1238, 1240 (Pa. Super. 2002).

In this case, Gasior avers that she has shown due diligence in moving the case forward based on the following.

> [Gasior] has over the years made multiple trips to the Allegheny County Prothonotary to attempt to move the case forward but was met with missing and/or misplaced files and direction from the Honorable Judge McGowan's staff that a "notice" would issue from the [trial c]ourt by mail, indicating to [Gasior] that there was nothing further she could do[.]

Gasior's Brief at 15.[4]  Gasior also argues that the case was delayed due to

Appellees' outstanding preliminary objections from 1993, as well as "fears

for her physical safety[.]"  *Id.* at 14, 17.  In addition, Gasior lists several of

the same obstructions purportedly committed by Appellees in her brief

regarding their alleged unclean hands.

a.  [Appellees'] failure to schedule hearings on their own [p]reliminary [o]bjections for over seventeen years;

b.  [Appellees'] efforts to harass, defame, and intimidate [Gasior] as a litigant and federal and congressional witness in order to coerce her into dropping her case;

c.  [Appellees'] improper handling and possession of the case record;

d.  [Appellees'] deceptive *non pros* pleadings omitting key procedural facts and withholding key documents from the trial court;

e.  [Appellees'] submission of an affidavit in support of its [m]otion for [j]udgment [of] [*n*]*on* [*p*]*ros* which knowingly and falsely claimed that … Orwig was unavailable as a

---

[4] To the extent Gasior attempts to incorporate by reference the "reasons set forth in her [r]esponses and [b]riefs in [o]pposition to [Appellees]' [m]otions for [j]udgments of [*n*]*on* [*p*]*ros*, and … her testimony and legal argument presented on March 28, 2014," we do not consider such arguments. Gasior's Brief at 15.  Our rules require that an appellant's **brief** be developed with "discussion and citation of authorities[.]"  Pa.R.A.P. 2119(a). Our Supreme Court has expressly disapproved of the practice of arguing via incorporation by reference, calling it "an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief."  ***Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011), *cert. denied*, ***Briggs v. Pennsylvania***, 132 S. Ct. 267 (2011).

> witness when Orwig's [s]eparation [a]greement required his participation in this litigation;
>
> f.  [Appellees'] involvement and participation in the more than one[-]year delay in transmitting the case record to the Superior Court in order to cause the litigation to be delayed until after the Republicans took over Congress in November, which ended all congressional investigations of Kennametal and caused [Gasior] to lose her congressional attorneys and federal protection.

*Id.* at 16-17.

After careful review, we conclude Gasior is not entitled to relief. First, Gasior has not provided any evidence or explanation as to these claims, or why they excuse her failure to move this case forward for **18 years** from 1995 onward. Additionally, to the extent Gasior faults Appellees for not scheduling argument on their outstanding 1993 preliminary objections, this argument fares no better. This Court has held that it is a plaintiff's duty to move the case forward, even when the opposing party has not scheduled argument on its own motions. ***See Indep. Tech. Servs.***, ***supra***; ***accord Hughes v. Fink, Fink & Assocs.***, 718 A.2d 316, 320-321 (Pa. Super. 1998); ***Pennridge Elec., Inc. v. Souderton Area Joint Sch. Auth.***, 615 A.2d 95, 99 (Pa. Super. 1992). Based on these considerations, we conclude Gasior is not entitled to relief on her first two issues.

In her next issue, Gasior argues that the trial court erred when it concluded that Appellees have suffered actual prejudice under ***Jacobs***.

- 11 -

Specifically, Gasior argues the trial court made misstatements of fact concerning the testimony of witnesses already contained within the record. Gasior's Brief at 20-25.

Our Supreme Court has held that, in requiring a party seeking a judgment of *non pros*, "defendants may be prejudiced by undue delays in litigation-memories fade, witnesses disappear and documents become lost or are destroyed." **Jacobs**, **supra** at 1102. In addition, "prejudice could be established by the death or absence of a material witness … [as well as] any substantial diminution of a party's ability to properly present its case at trial." **Id.** at 1103 (internal quotation marks and citations omitted).

In this case, Appellees have pointed to several instances where they have suffered prejudice due to Gasior's delay in pursuing her claims. Specifically, McKenna and Trooper Laposky have passed away during the dormancy of the litigation below. Kennametal's Brief at 23, 28. In addition, several witnesses during their depositions stated that their memories had faded over time although they noted they would have been able to recall material facts and details had they been asked about the same years ago.

For example, Jack Markowitz, the business editor for the Tribune testified at his deposition that he had no recollection of any of the research or work that went into several articles he authored about Kennametal in 1991 and 1992. N.T., 1/15/14, at 11-34. Judge Mahady also testified that he had no independent recollection of the arrest warrant he issued for Gasior

in 1990, his only recollection was based on documents showed to him during his deposition. N.T., 1/16/14, at 8-17. Also, Kozar, who was the reporter for the Bulletin who authored the articles Gasior claims were defamatory towards her, testified at his deposition that he could not recall how he investigated the story, fact-checked his story, the editing process, or the sources thereof. N.T., 2/14/14, at 33-54. Although Gasior has pointed to some witnesses' recollections in the record, it does not alter our conclusion that the death of one witness and one defendant, as well as the fading memories of witnesses, have prejudiced Appellees' ability to present a defense. *See Jacobs*, *supra*. Based on these considerations, we conclude Gasior is not entitled to relief on this issue.

In her fourth issue, Gasior argues that the trial court and its officers were biased against her in various ways. Gasior's Brief at 25-27. However, before we may review the merits of Gasior's claim, we must first ascertain whether Gasior has waived this issue.

Generally, appellate briefs are required to conform to the Rules of Appellate Procedure. *See generally* Pa.R.A.P. 2101. This Court is willing to construe *pro se* materials liberally, but "*pro se* status confers no special benefit on an appellant."[5] *In re Ullman*, 995 A.2d 1207, 1211-1212 (Pa. Super. 2010) (citation omitted), *appeal denied*, 20 A.3d 489 (Pa. 2011).

---

[5] Although Gasior filed her brief *pro se*, she was represented by counsel at oral argument.

Pennsylvania Rule of Appellate Procedure 2119(a) states that an appellant's "argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (internal quotation marks and citations omitted), *appeal denied*, 69 A.3d 603 (Pa. 2013).

In this case, Gasior's final issue alleges that the trial court was biased when it "seal[ed] the case record without a proper court order, impound[ed] the record in various judicial offices, and fail[ed] to properly enter certain pleadings on the record[.]" Gasior's Brief at 26. Gasior further contends that "at least four Common Pleas judges had or have conflicts of interests related to this case[.]" *Id.* Although Gasior has cited one case pertaining to due diligence, she does not discuss or develop any argument with citations to relevant legal authority as to why or how the trial court was biased against her during the pendency of this case. Gasior does not cite to any of

our cases involving trial court bias, or make any attempt to apply them to this case. Based on these considerations, we deem Gasior's fourth issue waived for want of development. *See Whitley*, *supra*.

Based on the foregoing, we conclude all of Gasior's issues are either waived or devoid of merit. Accordingly, the trial court's July 25, 2014 order is affirmed.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/20/2015