# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Farrell,             :

              Appellant    :

                             :

        v.                    :    No. 840 C.D. 2015

                             :    Submitted: January 29, 2016

Wesex Corporation        :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED: March 15, 2016**

Appellant City of Farrell (City) appeals from a final order of the Court of Common Pleas of Mercer County (trial court), dated February 18, 2015, directing the entry of a judgment of *non pros* against the City, relating to the City's three-count Complaint concerning the alleged failure of appellee Wesex Corporation (Wesex) to pay its alleged mortgage obligations to the City. The City challenges the entry of a judgment of *non pros* and the trial court's earlier order, dated February 16, 2007, sustaining a preliminary objection Wesex filed to Count II of the Complaint, which claimed that Wesex acted fraudulently with regard to the mortgage payments it allegedly owed the City. We vacate the trial court's February 18, 2015 final order and remand the matter to the trial court for further proceedings.

On or about August 9, 2006, the City filed a Complaint against Wesex. The Complaint included the following factual averments. In 1991, Sharon

Steel Corporation (Sharon Steel) constructed and/or completed a three-story office building in the City. The City, a non-profit development corporation, and the City of Sharon provided public loans for the project. Of a total of $1,370,000 in loans, the City lent Sharon Steel $800,000. All of the loans were secured through mortgages. Wesex was the construction contractor that erected the building. Wesex claimed that in order to complete the building, it needed additional funds, and Sharon Steel entered into a mortgage arrangement with Wesex, which created an $84,000 subordinate lien interest in favor of Wesex. Sharon Steel later filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania. At that time, Sharon Steel was in default of the terms of the three public-body mortgages, but the bankruptcy proceedings stayed foreclosure proceedings. When the building was released from the jurisdiction of the bankruptcy court, Wesex and the three public lenders entered into a novation, whereby the lenders would forego foreclosure proceedings and Wesex would acquire title to the building and satisfy the loans, including past-due interest amounts and late charges.

In 2004, Wesex advised the City that it intended to convey the property and requested confirmation of the amount still owed to the City. The City, however, could not locate documentation that would reveal that amount. At the time that Wesex contacted the City for confirmation of the amount due, Wesex had possession of a 1996 communication directed to Wesex's Certified Public Accountant, describing the amount it owed on the loan. Wesex "feigned ignorance of its Proposal intending to mislead [the City] to accept a sum substantially less than what [Wesex] knew or should have known was due [the City]." (Reproduced Record (R.R.) at 12a.) On October 11, 2005, Wesex sent a letter to the City

2

Council "again fraudulently" representing that the parties had to agree to a final payoff amount because no documentation was available to determine the actual payoff amount. (R.R. at 13a.)[1]  Based upon these factual allegations, the City sought damages based upon three causes of action:  (1) breach of contract (Count I); (2) fraud (Count II); and (3) unjust enrichment (Count III).

Wesex filed preliminary objections to the Complaint, and the trial court, by the order dated February 16, 2007, sustained the objection to Count II. Thereafter, Wesex filed an answer to the Complaint, new matter, and a counterclaim.  In the counterclaim, Wesex asserted that the agreement it had with the City regarding the building limited the City's recourse to foreclosure proceedings, and that the City, by initiating the claims in the Complaint, breached the agreement.  Wesex asserted that it has and will incur litigation costs as a result of the alleged breach.  The City filed preliminary objections to the counterclaim, which the trial court sustained.

---

[1] In its opinion addressing the preliminary objections, the trial court summarized the key factual allegations as follows:

> [The City] avers . . . that city employees were unable to find any paperwork on this transaction (though they did know that [Wesex] paid $4,660.94 every month on the mortgage).  [The City] also contends that it elected to rely upon [Wesex]'s alleged representations that the $800,000 mortgage, which was only in its tenth year of repayment, had a current balance of approximately $84,000.  [Wesex] paid this amount and [the City] satisfied the mortgage.  [The City] apparently learned of the financial discrepancies in 2006, and demanded payment for the deficiencies now alleged to be $519,207.30, plus interest.  [The City] initiated the present suit when [Wesex] refused to pay more on a mortgage already satisfied.

(R.R. at 278a-79a.)

The parties engaged in discovery during 2008 and 2009. On April 15, 2014, the City filed a notice to complete discovery pursuant to local practice. On May 9, 2014, Wesex filed a motion for entry of a judgment of *non pros* against the City. The City and Wesex filed briefs respectively opposing and supporting the motion. Those briefs are not part of the record.

Our Supreme Court has held that "[t]he question of granting a *non pros* due to the failure of the plaintiff to prosecute his action within a reasonable time rests within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Jacobs v. Halloran*, 710 A.2d 1098, 1101 (Pa. 1998). In *Jacobs*, our Supreme Court re-affirmed the *non pros* standard developed in *James Brothers Lumber Company v. Union Banking and Trust Company of DuBois*, 247 A.2d 587 (Pa. 1968):

> The effect of our decision today is to return to the three part test of *James Brothers*. To dismiss a case for inactivity pursuant to a defendant's motion for *non pros* there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause *actual prejudice* to the defendant. As always, this determination is to be made by the trial court, whose decision will not be disturbed absent an abuse of discretion.

*Jacobs*, 710 A.2d at 1103 (footnote omitted; emphasis in original).[2]

---

[2] The question before the Court in *Jacobs* was whether the proper standard to be applied with regard to the prejudice prong of the *non pros* test permitted the application of a presumption of prejudice. As indicated by the emphasized text, the Supreme Court concluded that a defendant must demonstrate actual prejudice as a result in the delay of prosecuting a complaint.

In this matter, on July 7, 2014, the trial court issued an order providing the parties with time to prepare a joint record and/or stipulations of fact "to address the question of whether the delay caused actual *prejudice* to [Wesex]. Either party may schedule an evidentiary hearing if necessary." (R.R. at 94a; emphasis added.) The order did not mention the first or second prong of the *non pros* analysis—*i.e.*, whether the City acted with a lack of due diligence and whether the City had compelling reasons to delay its prosecution of the Complaint.

On November 3, 2014, in accordance with the trial court's order, the parties submitted a joint stipulation of facts, which did not relate to the first or second *non pros* prongs. (R.R. at 109a-12a.) On the same date, Wesex filed a praecipe for evidentiary hearing. (R.R. at 105a.) In the praecipe, Wesex indicated that although the joint stipulation resolved some issues pertinent to the *non pros* motion, a hearing was necessary in order for Wesex to demonstrate that the City's delay in prosecuting its Complaint *prejudiced* Wesex. On January 29, 2015, the trial court held a hearing on the prejudice prong of the *non pros* motion.

On February 18, 2015, the trial court issued its order granting Wesex's motion for judgment of *non pros*, providing that the City's failure to pursue its claim between September 2009 and April 2014 constituted "a lack of due diligence to proceed with reasonable promptness which occurred without any compelling reason" and that the inaction "caused substantial prejudice to the ability of [Wesex] to defend this matter." (R.R. at 114a.) Thereafter, the City filed a notice of appeal, and the trial court directed the City to file a statement of errors complained of on appeal.

In its statement of errors complained of on appeal, the City asserted that the trial court erred in entering judgment of *non pros*, contending that:

5

(1) evidence of record did not support the trial court's finding of substantial prejudice to Wesex based on the City's delay in prosecuting its Complaint; (2) the City was not provided an opportunity to offer evidence to demonstrate that it had compelling reasons for its failure to prosecute its Complaint for more than four years because the trial court's orders concerning the evidentiary hearing provided only for the issue of whether the delay prejudiced Wesex; and (3) the trial court erred in sustaining the preliminary objection Wesex filed to the City's fraud claim (Count II).

On April 16, 2015, the trial court issued an opinion in accordance with Pa. R.A.P. 1925. The trial court only addressed the City's second claim of error— *i.e.*, that the trial court failed to provide the City with an opportunity to make an evidentiary record to support its claim that it acted with due diligence and had compelling reasons why it delayed the prosecution of its Complaint. The trial court noted that it was not until the City filed its statement of errors complained of on appeal that it became aware that the City wanted to have an evidentiary hearing on the issues. (R.R. at 280a-81a.) The trial court, nonetheless, concluded in its opinion that the City had been denied due process and that, consequently, the trial court entered its February 18, 2015 order in error with regard to the first and second prongs of the *non pros* standard. Specifically, the trial court expressed:[3]

> 1. The Court Orders leading up to the January 29, 2015 evidentiary hearing do limit the focus of the hearing to the actual prejudice prong of the non-pros test.

---

[3] One consideration the City apparently mentioned is its status as a distressed municipality under the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-.712, also known and referred to hereafter as Act 47.

6

2. Based upon those Orders, it is reasonable to believe that the parties would have been prepared to address the actual prejudice prong only.

3. The comments and discussions between the trial court and [the City]'s attorney indicate clearly that [the City] desired to develop the record to establish due diligence and compelling reasons for the delay, but correctly believed that the January 29, 2015 hearing had a limited focus:

> THE COURT: So today is an opportunity for [Wesex] to present any evidence that you might have in support of your motion [for Judgment of *Non Pros*]. Tr. A p.4 . . . .
>
> [AT THE END OF THE HEARING.] THE COURT: As I understand it here, the issue is the degree of prejudice, if any, to [Wesex] on that last prong of the test. Is that what the Court is to focus on here?
>
> MR. MALLOY: That is my understanding here.
>
> Mr. ACKER: That is my understanding of the order.

(R.R. at 281a-82a.)

The trial court noted the following discussion in support of its finding that the City intended to develop the record in the future:

> THE COURT: I didn't hear any testimony about the consequences of [the City] being in Act 47. Are there any stipulations of fact that address that . . . ?
>
> MR. MIRIZIO: We didn't—we didn't think that was one of the issues. The couple prior court orders appear to specifically limit it to actual prejudice, which is a third prong, not the first two prongs. I mean, I don't think there is a debate. The Court can certainly take judicial notice of Act 47 during the totality of this period.
>
> THE COURT: Well, that wasn't my problem. It was more the implications that might have been in Mr. Mirizio's brief at one point that because of Act 47 status they had limited funds, limited control over what they

7

could use their funds for, as an example, the forensic accountant that they claim they needed to build their case, I guess, and that the argument was it took us years to be able to afford that. And I haven't heard any evidence on it, and there is no stipulation on it; right?

MR. ACKER: I didn't think it was part of the scope of today's hearing. The two prior orders clearly indicate the scope is actual prejudice.

THE COURT: Okay.

(R.R. at 246a-47a.) The trial court commented that, at the time it rendered its order granting judgment of *non pros*, it did not have the transcript from the hearing and did not recall the colloquy quoted above when it ruled on the motion and on the issues of due diligence and compelling reasons for delay. (R.R. at 282a-83a.) The trial court was persuaded that it had been unfair to decide the matter before offering the City a hearing opportunity, noting that the colloquy showed that: (1) the City believed the scope of the hearing was to be limited to prejudice to Wesex as a result of the delay; and (2) "[the City] intended to develop the record further after the Court ruled on the actual prejudice prong." (R.R. at 282a.) Based upon this reasoning, the trial court recommended that this Court remand the matter for the development of a record pertaining to the first and second *non pros* elements.

On appeal, the City raises the following questions: (1) whether the trial court abused its discretion in granting the *non pros* judgment where no hearing was conducted regarding the first two prongs of the *non pros* test—elements for which a plaintiff bears the burden of proof; (2) whether the trial court erred in concluding that Wesex suffered prejudice from the City's delay in prosecuting its Complaint; and (3) whether the trial court erred in sustaining the preliminary objection to the City's fraud claim. We begin by addressing the City's claim that

8

the trial court abused its discretion in granting the *non pros* judgment without first offering the City a hearing regarding the first two prongs of the *non pros* test.

In its brief, the City relies upon the trial court's rationale regarding the City's intention to offer evidence. In response, Wesex presents two arguments: (1) the City did not raise the question of its right to an evidentiary hearing before the trial court issued its order, and, thus, the City waived the issue; and (2) even if the City did not waive the issue, its asserted reasons for not prosecuting its Complaint in a timely manner—*i.e.*, its status as a distressed municipality under Act 47 and lack of funds to pay for a forensic expert—do not excuse its lack of due diligence and do not constitute compelling reasons for the delay.

We first address the City's argument that the trial court abused its discretion in failing to provide a hearing opportunity and Wesex's responsive argument that the City waived the right to a hearing. As the trial court implicitly acknowledged, the trial court set the stage for the hearing on the prejudice prong and the limitation of the hearing to that issue. Under the circumstances, as reflected in the record, the City could not reasonably anticipate that the trial court would conduct a hearing limited to the prejudice prong and immediately thereafter issue an order addressing the other *non pros* elements and grant the *non pros* motion, without also offering the City a similar opportunity to flesh out the issues of due diligence and compelling reasons for delay.

The City participated in the first hearing, assuming, based upon the trial court's earlier orders, that the other prongs would not be addressed at that time. It was reasonable for the City to believe that the trial court might conduct subsequent hearings on those other issues, if necessary. If the trial court had determined that no prejudice occurred, then the inquiry for the trial court would

9

have been over and it could have issued an order denying the motion for *non pros*. Although the City appeared somewhat flummoxed during the hearing when questioned by the trial court regarding evidence concerning due diligence and the compelling reasons prongs of the *non pros* analysis, this too may be explained by the limited focus of the hearing as set forth in the scheduling order. While one could argue that the City should have proactively requested a hearing once the trial court indicated a willingness during the hearing to receive evidence from the City on the other issues, it does not stretch credulity to surmise that the City presumed that the trial court would issue a supplemental order substantively similar to the first order, asking for stipulations and/or whether the parties wanted to have a second hearing on the remaining prongs.

Based upon the foregoing analysis, we conclude that the trial court abused its discretion in failing to provide a hearing opportunity on the two remaining *non pros* prongs, and we commend the trial court for candidly acknowledging its mistake. It was reasonable to interpret the trial court's actions at the time it conducted a hearing as not constituting a completion of the proceedings, and, thus, it was reasonable for the City, surprised by an unexpected ruling following only a hearing on the prejudice prong, to raise the issue for the first time in its appeal.

Wesex also argues that a remand for an evidentiary hearing on the merits of the City's claim that it had compelling reasons for the delay would be futile. Wesex contends that decisions of both the Superior Court and the Supreme Court provide that a plaintiff's inability to pay for an expert witness does not constitute a compelling reason to delay prosecution of a complaint. Further, Wesex cites decisions holding that a plaintiff's financial constraints do not

constitute compelling reasons for delay. Wesex argues that the only circumstances that may support a finding that a plaintiff had compelling reasons for a lack of due diligence in prosecuting a complaint are circumstances that are outside the control of a plaintiff. While Wesex may be correct in these legal assertions, the problem in this matter is that the City was not afforded the opportunity to present any evidence, and we believe that the trial court was correct to note that failing. This Court is not in a position to pre-judge factors that may yet be established and may fall outside of the precedents to which Wesex has referred us. Consequently, we reject this argument.

Because the proper relief in this matter is to vacate the trial court's February 18, 2015 final order and remand the matter for further proceedings, we need not address the City's claim that the trial court erred in concluding that Wesex demonstrated actual prejudice as a result of the City's delay in prosecuting its Complaint.[4]

_____
P. KEVIN BROBSON, Judge

---

[4] We need not address the City's challenge of the trial court's interlocutory order, dated February 16, 2007, sustaining the preliminary objection to Count II of the Complaint, because we are vacating the trial court's final order entering a judgment of *non pros* and remanding the matter to the trial court for further proceedings. In the absence of a final order, no basis remains to consider at this time the City's challenge to the interlocutory order sustaining a preliminary objection.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

City of Farrell,                                      :
                Appellant                   :
                                                  :
                v.                                 :    No. 840 C.D. 2015
                                                  :
Wesex Corporation                          :

# **O R D E R**

AND NOW, this 15th day of March, 2016, the order of the Court of Common Pleas of Mercer County (trial court) is VACATED and the matter is REMANDED to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge